******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* DARRELL TINSLEY
## (SC 20479)

Robinson, C. J., and McDonald, D'Auria,
Kahn, Ecker and Keller, Js.

*Syllabus*

The defendant, who had been convicted of manslaughter in the first degree and risk of injury to a child, appealed to the Appellate Court from the trial court's denial of his motion to correct an illegal sentence. The defendant's conviction stemmed from an incident that occurred while he was watching the victim, a fifteen month old, when the victim's mother was at work. The defendant had alerted the victim's mother that something was wrong with the victim and picked her up from her place of employment. While the three of them were driving to the hospital, they were involved in a motor vehicle accident. The victim died at the hospital, and an autopsy revealed bruises on his cheek, one of his legs, and his chest, which occurred shortly before his death, and internal abdominal injuries, including a broken rib and a lacerated liver, the latter of which was determined to be the cause of the victim's death. Although the defendant ultimately was convicted of the lesser included offense of manslaughter in the first degree, the operative information had charged him with capital felony, alleging in relevant part that the defendant, "with the intent to cause the death of [the victim], caused the death of [the victim] . . . by blunt trauma to the abdomen." As to the risk of injury charge, the information alleged in relevant part that the defendant "did an act likely to impair the health of [the victim] . . . by inflicting multiple trauma to his face, head, chest, and abdomen and thereby causing: laceration of the liver, internal bleeding in the abdomen, fracture of the tenth right rib, and multiple contusions of the face, head, chest, and abdomen." In his motion to correct, the defendant claimed that his sentence imposed for manslaughter in the first degree and risk of injury to a child violated the constitutional prohibition against double jeopardy. The Appellate Court reversed the trial court's denial of the defendant's motion to correct. The Appellate Court determined that, when a defendant claims that his conviction includes a lesser included offense, the court does not merely compare the elements of each offense under *Blockburger* v. *United States* (284 U.S. 299) but, instead, asks whether it is possible to commit the greater offense, "in the manner described in the information," without having first committed the lesser offense. Accordingly, the Appellate Court concluded that, even though risk of injury was not a lesser included offense of manslaughter in the first degree under *Blockburger*, insofar as each offense required poof of an element that the other did not, it was a lesser included offense as charged by the state in the information because it was not possible for the defendant to have committed manslaughter in the first degree by inflicting blunt trauma to the victim's abdomen without also impairing the health of the victim by inflicting trauma to his abdomen. On the granting of certification, the state appealed to this court. *Held* that the Appellate Court incorrectly determined that the defendant's convictions of risk of injury to a child and manslaughter in the first degree were the same offense for double jeopardy purposes, as that court improperly considered the facts alleged in the information rather than confining its analysis to the statutory elements of the offenses, and, accordingly, this court reversed the judgment of the Appellate Court and remanded the case with direction to affirm the trial court's denial of the defendant's motion to correct: the Appellate Court improperly conflated the cognate pleadings approach, by which courts determine whether a defendant has received constitutionally adequate notice of the charges against him when a lesser included offense instruction has been requested, with the *Blockburger* test, which protects against cumulative punishments and under which two distinct statutory provisions constitute the same offense only if each provision requires proof of a fact that the other does not; moreover, although the language of the charging documents is relevant to whether the statutory elements of each offense are the

same under *Blockburger*, federal and state precedent, including this court's own case law, confirmed that the statutory elements, rather than the factual allegations in the charging documents, drive the *Blockburger* inquiry, notwithstanding a substantial overlap in the proof offered to establish the crimes; furthermore, to the extent that this court has suggested that a court undertaking a double jeopardy analysis should consider the facts alleged by the state "in the manner described in the information," that directive was relevant in determining whether one crime is a lesser included offense of another only insofar as the reviewing court is consulting the information in order to determine whether it alleges distinct elements for each offense, rather than in determining the particular factual predicate of the case; in the present case, manslaughter in the first degree, which requires proof that the defendant, with intent to cause serious physical injury, caused the victim's death, and risk of injury to a child, which requires proof of the defendant's impairment to the health of a child less than sixteen years of age, each contained an element that the other did not, and it was therefore possible to commit either offense without committing the other.

Argued April 1, 2021—officially released August 27, 2021*

*Procedural History*

Substitute information charging the defendant with the crimes of capital felony and risk of injury to a child, brought to the Superior Court in the judicial district of Hartford and tried to the jury before *Barry, J.*; verdict and judgment of guilty of the lesser included offense of manslaughter in the first degree and of risk of injury to a child, from which the defendant appealed to the Appellate Court, *Lavery, C. J.*, and *Schaller* and *Zarella, Js.*, which affirmed the trial court's judgment; thereafter, the court, *Schuman, J.*, denied the defendant's motion to correct an illegal sentence, and the defendant appealed to the Appellate Court, *DiPentima, C. J.*, and *Bright* and *Devlin, Js.*, which reversed the trial court's judgment, and the state, on the granting of certification, appealed to this court. *Reversed*; *judgment directed.*

*Melissa L. Streeto*, senior assistant state's attorney, with whom, on the brief, were *Sharmese L. Hodge*, state's attorney, *Gail P. Hardy*, former state's attorney, and *John Fahey*, supervisory assistant state's attorney, for the appellant (state).

*Naomi T. Fetterman*, for the appellee (defendant).

*Opinion*

ROBINSON, C. J. The sole issue in this certified appeal is the extent to which a court should consider the facts alleged by the state in the charging documents when determining whether a crime is a lesser included offense of another, rather than confining its analysis to the elements of the statutes at issue, under *Blockburger* v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). The state appeals, upon our grant of its petition for certification,[1] from the judgment of the Appellate Court reversing the judgment of the trial court, which denied the motion to correct an illegal sentence filed by the defendant, Darrell Tinsley, on the basis of its conclusion that the defendant's convictions of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1)[2] and risk of injury to a child in violation of General Statutes (Rev. to 1995) § 53-21, as amended by Public Acts 1995, No. 95-142, § 1,[3] violate the constitutional prohibition against double jeopardy. See *State* v. *Tinsley*, 197 Conn. App. 302, 304, 326, 232 A.3d 86 (2020). On appeal, the state claims that the Appellate Court improperly considered the factual allegations in the information in concluding that risk of injury to a child, as charged therein, was a lesser included offense of manslaughter in the first degree, rendering the defendant's conviction of both offenses a violation of his right to be free from double jeopardy. We conclude that the Appellate Court improperly considered the facts alleged in the state's information, rather than confining its analysis to the statutory elements under the *Blockburger* test, insofar as risk of injury to a child is not a lesser included offense of manslaughter in the first degree because each offense requires the state to prove an element the other does not. Accordingly, we reverse the judgment of the Appellate Court.

The record reveals the following relevant facts and procedural history, aptly set forth by the Appellate Court in its opinion. "[Despite having] an unstable relationship, [the defendant and the victim's mother] cohabited in a one bedroom apartment along with the [fifteen month old] victim . . . . During the course of the adults' relationship, individuals who knew the victim noticed a marked change in his behavior when he was in the presence of the defendant. At such times, the victim was timid, withdrawn and afraid of the defendant. The defendant's attitude toward the victim ranged from indifference to dislike. When [the victim's mother] was no longer able to avail herself of professional child care, the defendant sometimes took care of the victim while [the victim's mother] worked.

"Prior to his death, the victim was in good health. On December 8, 1996, between 8 and 8:30 a.m., the defendant drove [the victim's mother] to her place of employment. According to [the victim's mother], there

was nothing wrong with the victim when she went to work. During the morning, [the victim's mother] and the defendant spoke by telephone several times concerning the victim. At approximately 11:15 a.m., the defendant telephoned [the victim's mother], stating that there was something wrong with the victim and that he did not know what was the matter. The defendant then drove the victim to [the victim's mother's] place of employment, and, from there, all three proceeded to the Connecticut Children's Medical Center (medical center) in Hartford. They were involved in a motor vehicle accident en route.

"When he arrived at the medical center, the victim was in critical condition because he was not breathing and had little heart activity. The victim died when resuscitation efforts failed. An autopsy revealed bruises on the victim's right cheek, left leg and chest, which an associate medical examiner from the [O]ffice of the [C]hief [M]edical [E]xaminer determined occurred shortly before the victim's death. The injuries were inconsistent with an automobile accident, a twelve inch fall into a bathtub, cardiopulmonary resuscitation or bumping into a fire door, which were explanations offered by the defendant. The victim also suffered significant internal injuries, namely, multiple fresh cranial hemorrhages, a broken rib and a lacerated liver that caused three quarters of his blood to enter his abdominal cavity. According to the associate medical examiner, the victim's liver was lacerated by blunt trauma that occurred within [one] hour of death and was the cause of death." (Internal quotation marks omitted.) Id., 304–306.

"The state charged the defendant with capital felony in violation of General Statutes (Rev. to 1995) § 53a-54b (9), as amended by [§ 3 of] No. 95-16 of the 1995 Public Acts, and risk of injury to a child in violation of § 53-21. The jury found the defendant guilty of the lesser included offense of manslaughter in the first degree in violation of § 53a-55 (a) (1) and risk of injury to a child. On February 6, 1998, the court sentenced the defendant to twenty years of incarceration on the manslaughter count and ten years of incarceration on the risk of injury count with the sentences to run consecutively. . . . On March 8, 2018, the defendant . . . filed a . . . motion to correct an illegal sentence and an accompanying memorandum of law, [claiming that his sentence violated his federal and state constitutional rights to be free from] double jeopardy . . . . On May 15, 2018, the court issued its memorandum of decision denying the defendant's motion to correct an illegal sentence." (Footnotes omitted.) Id., 306–307.

Specifically, the court stated: " 'It . . . seems to me entirely possible that the fatal blows to the ribs, liver, and abdomen could have occurred from a separate blow that was interrupted perhaps by a minute or so before or after trauma was inflicted to the child's face and

head, which is also alleged in the information. And in that situation it would not clearly be one continuous uninterrupted assault. I acknowledge the defense argument that there's no way to actually parse through all this at this time twenty years later, but ultimately it's the defendant's burden, and if we can't do that then the defendant has not met his burden.' " Id., 309.

The defendant appealed from the judgment of the trial court to the Appellate Court, claiming that "his conviction and punishment for manslaughter in the first degree and risk of injury arose from the same transaction and that risk of injury is a lesser included offense of manslaughter in the first degree, as charged in this matter, in violation of his right to be free from double jeopardy." Id. The Appellate Court agreed with the defendant. Specifically, the court concluded that, despite risk of injury not being a lesser included offense of manslaughter in the first degree under the *Blockburger* test, it was nevertheless a lesser included offense as charged in the information in this case. Id., 325. Accordingly, the Appellate Court reversed the judgment of the trial court and remanded the case for further proceedings. Id., 326. This certified appeal followed.

Before turning to the parties' claims, we set forth the applicable standard of review and background principles governing the analysis of double jeopardy claims. "A defendant's double jeopardy claim presents a question of law, over which our review is plenary. . . . The double jeopardy clause of the fifth amendment to the United States constitution provides: [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb. The double jeopardy clause [applies] to the states through the due process clause of the fourteenth amendment. . . . This constitutional guarantee prohibits not only multiple trials for the same offense, but also multiple punishments for the same offense in a single trial." (Internal quotation marks omitted.) *State* v. *Porter*, 328 Conn. 648, 654–55, 182 A.3d 625 (2018).

"Double jeopardy analysis in the context of a single trial is a [two step] process, and, to succeed, the defendant must satisfy both steps. . . . First, the charges must arise out of the same act or transaction [step one]. Second, it must be determined whether the charged crimes are the same offense [step two]. Multiple punishments are forbidden only if both conditions are met. . . . At step two, we [t]raditionally . . . have applied the *Blockburger* test to determine whether two statutes criminalize the same offense, thus placing a defendant prosecuted under both statutes in double jeopardy: [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." (Citations omitted;

footnote omitted; internal quotation marks omitted.) Id., 655; see also *State* v. *Goldson*, 178 Conn. 422, 424, 423 A.2d 114 (1979). At the outset, we note that the Appellate Court's conclusion that the defendant's convictions of manslaughter in the first degree and risk of injury arose from the same act or transaction perpetuated on the same victim is undisputed. See *State* v. *Tinsley*, supra, 197 Conn. App. 319. Accordingly, pursuant to the second step of *Blockburger*, we now turn to whether risk of injury to a child is a lesser included offense of manslaughter in the first degree, rendering them the same offense for double jeopardy purposes.

"Our case law has been consistent and unequivocal" that the second step of *Blockburger* "is a technical one and examines only the statutes, charging instruments, and bill of particulars as opposed to the evidence presented at trial." (Internal quotation marks omitted.) *State* v. *Porter*, supra, 328 Conn. 656; accord *State* v. *Bernacki*, 307 Conn. 1, 9, 52 A.3d 605 (2012), cert. denied, 569 U.S. 918, 133 S. Ct. 1804, 185 L. Ed. 2d 811 (2013). When conducting this analysis, "we are concerned with theoretical possibilities, and do not focus on the evidence presented." (Internal quotation marks omitted.) *State* v. *Mezrioui*, 26 Conn. App. 395, 403–404, 602 A.2d 29, cert. denied, 224 Conn. 909, 617 A.2d 169 (1992).

Although it is well settled that, under *Blockburger*, a court may look to the charging documents to determine whether one crime is a lesser included offense of another, at issue in this appeal is the extent to which the particular facts alleged within the charging documents are relevant to that analysis. The state challenges the Appellate Court's conclusion that, "[when] the defendant claims that his or her conviction includes a lesser included offense, we employ a different analysis than the traditional *Blockburger* comparison of the elements of each offense. . . . 'The test for determining whether one violation is a lesser included offense in another violation is whether it is possible to commit the greater offense, *in the manner described in the information or bill of particulars*, without having first committed the lesser.' " (Citations omitted; emphasis added.) *State* v. *Tinsley*, supra, 197 Conn. App. 313. The Appellate Court cited to a series of cases from both this court and the Appellate Court that have included the language, "in the manner described in the information," when considering whether one crime is a lesser included offense of another, namely, *State* v. *Miranda*, 260 Conn. 93, 125, 794 A.2d 506, cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002), *State* v. *Greco*, 216 Conn. 282, 292, 579 A.2d 84 (1990); *State* v. *Goldson*, supra, 178 Conn. 426, *State* v. *Bumgarner-Ramos*, 187 Conn. App. 725, 749, 203 A.3d 619, cert. denied, 331 Conn. 910, 203 A.3d 570 (2019), and *State* v. *Flynn*, 14 Conn. App. 10, 17–18, 539 A.2d 1005, cert. denied, 488 U.S. 891, 109 S. Ct. 226, 102 L. Ed. 2d 217

(1988). See *State* v. *Tinsley*, supra, 313. For the reasons discussed in this opinion, we conclude that, under *Blockburger*, these cases do not require the case specific, fact sensitive inquiry in which the Appellate Court engaged.

The parties dispute whether the Appellate Court correctly determined that the facts alleged by the state in the information are determinative of the double jeopardy inquiry under *Blockburger*. The state claims that the court should consider only the statutory elements of each offense and that two crimes do not become greater or lesser included offenses by virtue of the specific facts alleged by the state in the information. In response, the defendant argues that the Appellate Court correctly determined that the two offenses, *as described in the information*, are the same offense, regardless of their differing statutory elements. We agree with the state and conclude that, under the *Blockburger* test, manslaughter in the first degree and risk of injury to a child are not greater and lesser included offenses because each has a statutory element the other does not, regardless of the facts alleged in the information. Accordingly, the defendant's conviction of both offenses did not violate the prohibition against double jeopardy.

At the center of the parties' dispute and the Appellate Court's conclusion is the language "in the manner described in the information." The issue before us is whether this language alters the *Blockburger* test and requires a court to consider the elements of the offense within the specific factual scenario alleged in the charging documents. At the outset, we recognize that "in the manner described in the information" is language that has appeared, in the double jeopardy context, under two common instances in which a court must determine whether one crime is a lesser included offense of another. A comparison of those two instances highlights how they have been conflated, and we take this opportunity to clarify the appropriate double jeopardy analysis under *Blockburger*.

The first instance in which a court must determine whether one crime is a lesser included offense of another, in the context of double jeopardy, is the "cognate pleadings approach." *State* v. *Tomlin*, 266 Conn. 608, 618, 835 A.2d 12 (2003). The cognate pleadings approach is used to determine whether a defendant has received constitutionally adequate notice of the charges against him when a lesser included offense instruction has been requested. See id., 617–18. "A defendant is entitled to an instruction on a lesser [included] offense if, and only if . . . [among other conditions] it is not possible to commit the greater offense, *in the manner described in the information or bill of particulars*, without having first committed the lesser . . . ."[4] (Emphasis added.) *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980); see also *State* v. *Brown*, 163

Conn. 52, 62, 301 A.2d 547 (1972) ("to require an instruction on a lesser included offense, the lesser offense must not require any element which is not needed to commit the greater offense in the manner alleged in the information or the bill of particulars").

Although the cognate pleadings approach bears some relation to the double jeopardy analysis, it is, by definition, distinct from the *Blockburger* test that a court engages in to decide if being put to jeopardy on a lesser offense bars a later prosecution on the greater offense or if the conviction of two offenses in a single trial essentially punishes a defendant for a single crime. See *State* v. *Greco*, supra, 216 Conn. 292 (*Blockburger* test is distinct analysis from test evaluating jury instructions). In contrast to the cognate pleadings approach, when the court seeks to determine whether a defendant's conviction of multiple crimes violates his right against double jeopardy under *Blockburger*, it is well settled that "the test . . . is whether each provision requires proof of a fact which the other does not." (Internal quotation marks omitted.) Id., 291; accord *State* v. *John*, 210 Conn. 652, 695, 557 A.2d 93 (1989), cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989), and cert. denied sub nom. *Seebeck* v. *Connecticut*, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989); *State* v. *Wright*, 197 Conn. 588, 593, 500 A.2d 547 (1985).

Subsequent federal and sister state precedent, along with the United States Supreme Court's own "decisions applying [*Blockburger*'s] principle reveal . . . [that] the [c]ourt's application of the [*Blockburger*] test focuses on the statutory elements of the offense. If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, *notwithstanding a substantial overlap in the proof offered to establish the crimes*." (Citations omitted; emphasis added.) *Iannelli* v. *United States*, 420 U.S. 770, 785 n.17, 95 S. Ct. 1284, 43 L. Ed. 2d 616 (1975); see *Gore* v. *United States*, 357 U.S. 386, 389, 78 S. Ct. 1280, 2 L. Ed. 2d 1405 (1958); *American Tobacco Co.* v. *United States*, 328 U.S. 781, 788–89, 66 S. Ct. 1125, 90 L. Ed. 1575 (1946); see also *United States* v. *Dixon*, 509 U.S. 688, 696, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993) ("[i]n both the multiple punishment and multiple prosecution contexts, this [c]ourt has concluded that [when] the two offenses for which the defendant is punished or tried cannot survive the 'same-elements' test, the double jeopardy bar applies"); *United States* v. *DeCarlo*, 434 F.3d 447, 455–56 (6th Cir. 2006) ("[t]he [d]ouble [j]eopardy [c]lause is not violated merely because the same evidence is used to establish more than one statutory violation if discrete elements must be proved in order to make out a violation of each statute"). The purposes of the two tests highlight a key distinction between the analyses. The *Blockburger* test protects "against cumulative punishments [and] is . . . designed to ensure [only] that the sentencing discretion of the courts is confined to the limits established by the

legislature." (Internal quotation marks omitted.) *State* v. *Greco*, supra, 216 Conn. 293. The cognate pleadings approach, on the other hand, is "grounded on the premise that whe[n] one or more offenses are lesser than and included within the crime charged, notice of the crime charged includes notice of all lesser included offenses. . . . This notice permits each party to prepare a case properly, each cognizant of its burden of proof."[5] (Internal quotation marks omitted.) *State* v. *Tomlin*, supra, 266 Conn. 617.

We acknowledge that, under both the cognate pleadings approach and the *Blockburger* test, the language of the statutes under which the defendant is charged, as well as the charging documents, are relevant. See *State* v. *Greco*, supra, 216 Conn. 292. The Appellate Court, however, did more than examine the charging documents to determine the statutory elements of each offense, as is required under *Blockburger*. Instead, the court relied on the specific factual manner in which the defendant's offenses were described in the information: "Focusing our analysis on the theoretical possibilities, rather than the evidence, we cannot discern a scenario in which the defendant could have caused the death of the fifteen month old victim by blunt trauma to the abdomen without also impairing the health of the victim by inflicting trauma to his abdomen. Stated differently, it was not possible for the defendant to commit the homicide offense, *in the manner described in the information*, without first having committed risk of injury to a child." (Emphasis added.) *State* v. *Tinsley*, supra, 197 Conn. App. 324. Therefore, the Appellate Court improperly conflated the cognate pleadings approach with the *Blockburger* analysis because the cognate pleadings approach, unlike the *Blockburger* test, "does not insist that the elements of the lesser offense be a subset of the higher offense. It is sufficient that the lesser offense have certain elements in common with the higher offense . . . . [In addition], the relationship between the offenses is determined not by a comparison of statutory elements in the abstract, but by reference to the pleadings in the case." (Internal quotation marks omitted.) *State* v. *Tomlin*, supra, 266 Conn. 618. Essentially, by its definition, the cognate pleadings approach is inconsistent with the well established *Blockburger* test, which, by its own terms, is limited to considering only the elements of the statutes and the charging documents.[6]

The defendant argues that, in *State* v. *Tomlin*, supra, 266 Conn. 608, this court rejected the *Blockburger* analysis when determining whether one offense is a lesser included offense of another in favor of the cognate pleadings approach. We disagree. In *Tomlin*, this court considered whether, under the circumstances of that case, the trial court had properly instructed the jury that manslaughter was a lesser included offense of murder. Id., 627–28. As we discussed previously in this opin-

ion, whether a lesser included offense instruction is appropriate in a particular case is governed by an analysis distinct from the *Blockburger* test. Indeed, the court in *Tomlin* appropriately did not reference *Blockburger* at all in the entirety of its opinion in that case. Thus, the defendant's reliance on *Tomlin* is misplaced.

The defendant also points to this court's statement in *State* v. *Bletsch*, 281 Conn. 5, 28, 912 A.2d 992 (2007), that "[t]he *Blockburger* test . . . requires that we look to charging instruments for the facts the state has alleged to satisfy the statutory elements." We disagree with the defendant's characterization of *Bletsch* because this court's reference to the facts alleged in the information in that case was to better ascertain under which portion of the statutes the defendant was charged. The defendant in *Bletsch* alleged that "one cannot engage in sexual intercourse with a child under sixteen . . . without either having contact with her intimate parts or without subjecting the victim to contact with that person's intimate parts . . . and that sexual intercourse with a child under sixteen necessarily will impair the child's morals." Id. This court considered the facts alleged in the information, not to position the elements within the facts of the charged offense, as the Appellate Court did in the present case, but to consider all *hypothetical* scenarios that would prove one offense and not the other under the statutory elements. This court concluded that "it is possible to have contact with the victim's intimate parts, such as her breasts, without engaging in sexual intercourse. Consequently, it was possible to prove each offense in the manner charged in the substitute information without necessarily proving the other offense." Id., 29. Therein lies the distinction. In *Bletsch*, this court referenced the information to ascertain all possible scenarios in which one crime could be committed without the other. In contrast, the defendant in the present case asks us to limit all hypothetical scenarios only to the one that is described in the information, namely, that manslaughter of a minor child cannot occur without risk of injury to that child. Such analysis would alter the emphasis *Blockburger* places on the statutory elements, and we decline to do so.

We recognize that both this court and the Appellate Court have used the phrase in "the manner described in the information" within various *Blockburger* inquiries. Such references appear to have led to significant confusion regarding, and ultimately conflation of, the cognate pleadings approach and the *Blockburger* test. Illustrating this confusion, the Appellate Court concluded that, "[when] the defendant claims that his or her conviction includes a lesser included offense, we employ a different analysis than the traditional *Blockburger* comparison of the elements of each offense." *State* v. *Tinsley*, supra, 197 Conn. App. 313. To support this conclusion, the court relied on three Connecticut cases, namely,

*State* v. *Greco*, supra, 216 Conn. 292, *State* v. *Carlos P.*, 171 Conn. App. 530, 537–39, 157 A.3d 723, cert. denied, 325 Conn. 912, 158 A.3d 321 (2017), and *State* v. *Raymond*, 30 Conn. App. 606, 610–11, 621 A.2d 755 (1993). These cases, however, do not stand for the proposition that an analysis other than the *Blockburger* test should be used to determine whether a defendant's conviction under two statutes violates the prohibition against double jeopardy. In each of these three cases, this court or the Appellate Court undertook a traditional *Blockburger* analysis and examined the statutory elements of the offenses.

The inclusion of "in the manner described in the information" has not, and cannot, alter the application of the *Blockburger* test. To illustrate this point, we briefly review a series of cases that contain the phrase "in the manner described in the information" or similar language, including those cases referenced by the Appellate Court.

In *State* v. *Miranda*, supra, 260 Conn. 93, this court concluded that assault in the first degree and risk of injury to a child "both require proof of elements that the other does not. Consequently, it is *possible* to prove one offense in the manner charged in the information without necessarily proving the other offense." (Emphasis in original.) Id., 126. This court referenced *only the statutory elements* required to prove each offense. See id. The information was relevant in identifying the charges against the defendant and the elements the state had to prove. See id. Similarly, in *Greco*, this court concluded that, because "there are no elements of first degree robbery and first degree burglary [that] are not also elements of felony murder when the felony murder count alleges 'robbery and burglary' as the predicate offenses, these offenses constitute the 'same offense' as the felony murder charge under the *Blockburger* test." *State* v. *Greco*, supra, 216 Conn. 292. Therefore, the information was relevant to the court's analysis insofar as it identified the predicate offenses for felony murder. See id.; see also *State* v. *Goldson*, supra, 178 Conn. 426–27 (concluding that it is impossible to transport narcotics without possessing narcotics); *State* v. *Bumgarner-Ramos*, supra, 187 Conn. App. 751 ("[c]onsidering the theoretical possibilities . . . and not the evidence, as [a court is] required to do in the second step of the *Blockburger* analysis, [the court is] aware of no conceivable circumstance in which the defendant could have caused [the victim's] death without also having caused her serious physical injury"); *State* v. *Raymond*, supra, 30 Conn. App. 611–12 (considering language of information and concluding "that the information alleges two different intents"); *State* v. *Flynn*, 14 Conn. App. 10, 17–18, 539 A.2d 1005 (considering elements of charges and whether each provision requires proof of additional fact that other does not), cert. denied, 488 U.S. 891, 109 S. Ct. 226, 102 L. Ed. 2d

217 (1988). Thus, the "manner described in the information" is relevant in determining whether one crime is a lesser included offense of another only to the extent the reviewing court is consulting the information in order to determine whether it alleges distinct elements for each offense, rather than to determine the particular factual predicate of the case. Indeed, this court does not always consult the information when it is evident that each offense contains an element the other does not. See, e.g. *State* v. *McCall*, 187 Conn. 73, 91, 444 A.2d 896 (1982) (concluding that risk of injury to child is not lesser included offense of sexual assault in second degree because "[e]ach requires proof of an element not required by the other").

The United States Supreme Court's decision in *Illinois* v. *Vitale*, 447 U.S. 410, 100 S. Ct. 2260, 65 L. Ed. 2d 228 (1980), further confirms that the statutory elements, rather than the factual allegations, drive the *Blockburger* inquiry. In *Vitale*, the defendant argued that, under Illinois law, it was impossible to convict him of manslaughter without also proving his reckless failure to slow his vehicle because the state alleged that the victim's death was caused by his failure to brake. See id., 418. The court disagreed and concluded that "[t]he point is that if manslaughter by automobile does not always entail proof of a failure to slow, then the two offenses are not the 'same' under the *Blockburger* test. The mere possibility that the [s]tate will seek to rely on all of the ingredients necessarily included in the traffic offense to establish an element of its manslaughter case would not be sufficient to bar the latter prosecution."[7] Id., 419. Therefore, because the well established *Blockburger* test focuses on the elements of each offense rather than the facts alleged in the information, we now consider the elements that the state must prove for manslaughter in the first degree and risk of injury to a child.

In the present case, the defendant, although initially charged with capital felony, was convicted of the lesser included offense of manslaughter in the first degree in violation of § 53a-55 (a) (1), which requires the state to prove that (1) "the defendant intended to cause serious physical injury to the victim," and (2) "he caused [the victim's] death." (Internal quotation marks omitted.) *State* v. *Greene*, 186 Conn. App. 534, 550, 200 A.3d 213 (2018). The information alleged that the defendant, "with the intent to cause the death of [the victim], caused the death of [the victim], who was then [fifteen] months of age, by blunt trauma to the abdomen."[8]

The defendant was also convicted of risk of injury to a child in violation of the act prong of § 53-21.[9] See footnote 9 of this opinion. The state had to prove that the defendant, "with the general intent to do so, committed (1) an act (2) likely to impair the morals or health (3) of a child under the age of sixteen." (Internal quotation marks omitted.) *State* v. *Owens*, 100 Conn. App. 619,

636, 918 A.2d 1041, cert. denied, 282 Conn. 927, 926 A.2d 668 (2007). The information alleged that the defendant "did an act likely to impair the health of [the victim], a child who was then [fifteen] months of age, by inflicting multiple trauma to his face, head, chest, and abdomen and thereby causing: laceration of the liver, internal bleeding in the abdomen, fracture of the tenth right rib, and multiple contusions of the face, head, chest, and abdomen."

The statutory elements of manslaughter in the first degree and risk of injury to a child indicate that each offense contains an element that the other does not. Manslaughter in the first degree under § 53a-55 (a) (1) requires the state to prove that the defendant, with intent to cause serious physical injury, caused the victim's death, whereas risk of injury to a child in violation of § 53-21 requires proof of impairment to the health of a child less than sixteen years of age. Thus, it is conceivable to commit the crime of manslaughter in the first degree without committing risk of injury to a child under sixteen. Similarly, it is entirely possible to commit the crime of risk of injury to a child without committing manslaughter in the first degree because an impairment to the health of a child does not necessarily involve causing the death of a child by intentionally causing serious physical injury. The Appellate Court's additional consideration of the facts alleged in the information, specifically with respect to the victim's abdominal injury, was misplaced because that analysis does not shed light on whether the two offenses each contain an element of proof the other does not. The existence of an abdominal injury is not an element of either offense. Because the United States Supreme Court has declined to consider facts alleged in the information when conducting a *Blockburger* analysis, we decline to import that consideration into the double jeopardy analysis.

Finally, the defendant argues that we should treat his convictions of manslaughter in the first degree in violation of § 53a-55 (a) (1) and risk of injury to a child in violation of § 53-21 as the same offense for double jeopardy purposes, even if they constitute separate offenses under the *Blockburger* test. "The *Blockburger* test is a rule of statutory construction, and because it serves as a means of discerning congressional purpose the rule should not be controlling [when], for example, there is a clear indication of contrary legislative intent." (Internal quotation marks omitted.) *State* v. *Miranda*, supra, 260 Conn. 127; accord *State* v. *Greco*, supra, 216 Conn. 293. Given our conclusion that, under *Blockburger*, the defendant's convictions of manslaughter in the first degree and risk of injury to a child "do not constitute the same offense, the burden remains on the defendant to demonstrate a clear legislative intent to the contrary." (Internal quotation marks omitted.) *State* v. *Schovanec*, 326 Conn. 310, 326, 163 A.3d 581 (2017). The defendant, however, has provided no authority for

his claim that the legislature intended to treat §§ 53a-55 (a) (1) and 53-21 as the same offense for double jeopardy purposes. Accordingly, we conclude that §§ 53a-55 (a) (1) and 53-21 are not the same offense for double jeopardy purposes. See, e.g., *State* v. *Miranda*, supra, 127.[10] The Appellate Court, therefore, incorrectly determined that the defendant's convictions of risk of injury to a child in violation of § 53-21 and manslaughter in the first degree in violation of § 53a-55 (a) (1) violated the defendant's right to be free from double jeopardy.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.

\* August 27, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] We granted the state's petition for certification to appeal, limited to the following issue: "Did the Appellate Court correctly conclude that, notwithstanding the fact that manslaughter in the first degree, under General Statutes § 53a-55 (a) (1), and risk of injury to a child, under General Statutes (Rev. to 1995) § 53-21, as amended by Public Acts 1995, No. 95-142, § 1, are not the same offense under *Blockburger* v. *United States*, [supra, 284 U.S. 299], the defendant's conviction of those crimes nonetheless violated the double jeopardy clause of the United States constitution because, as charged in the information, those crimes stood in relation of greater and lesser included offenses?" *State* v. *Tinsley*, 335 Conn. 927, 234 A.3d 979 (2020).

[2] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . . ."

[3] General Statutes (Rev. to 1995) § 53-21, as amended by No. 95-142, § 1, of the 1995 Public Acts, provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony." All references to § 53-21 in this opinion are to the 1995 revision of the statute, as amended by No. 95-142, § 1, of the 1995 Public Acts.

[4] By way of background, we note that "[a] defendant is entitled to an instruction on a lesser offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980).

[5] Although we do not consider the cognate pleadings approach in great detail here because this case does not concern a lesser included offense instruction, we note that "[c]ourts face a [two part] analysis when considering lesser included offense issues: first, does the offense meet the definition of a lesser included offense; and second, if it is a lesser included offense, should an instruction be given to the jury?" J. Minerly, "The Interplay of Double Jeopardy, the Doctrine of Lesser Included Offenses, and the Substantive Crimes of Forcible Rape and Statutory Rape," 82 Temp. L. Rev. 1103, 1107 (2009). *Blockburger* addresses the first inquiry as to whether a defendant may be punished for multiple crimes. See id., 1110–11. States have varying approaches to answer the second inquiry regarding jury instructions; Connecticut uses the cognate pleadings approach. See, e.g., *State* v. *Tomlin*, supra, 266 Conn. 618.

"The [cognate pleadings] approach uses the pleadings, rather than the statutory elements, to determine whether a [lesser included] offense charge

is acceptable. States using this approach compare the elements, as modified by the defendant's charging instrument, to the elements of the proposed [lesser included] offense. If the lesser offense is described by the pleadings, then the charge is permissible. This method allows the court to consider the specific facts as stated in the pleadings, rather than being tied to the letter of the elements of the charged offense. In sum, it is a more customized approach than the statutory-elements method of analysis." (Footnotes omitted.) A. Peters, "Thirty-One Years in the Making: Why the Texas Court of Criminal Appeals' New Single-Method Approach to Lesser-Included Offense Analysis Is a Step in the Right Direction," 60 Baylor L. Rev. 231, 240 (2008).

[6] We note that the defendant, throughout his brief, describes the cognate pleading approach as part and parcel of the *Blockburger* analysis. For example, the defendant argues that, because the cognate pleadings approach references the factual allegations contained in the state's information to determine whether one crime is the lesser included offense of another for purposes of jury instructions, the same approach should be applied to a *Blockburger* analysis. The defendant, however, does not direct us to any authority to support the proposition that the two approaches are interchangeable.

[7] The United States Supreme Court in *Vitale* did not ultimately resolve the issue of whether manslaughter and failure to reduce speed were greater and lesser included offenses. The court observed that the "Illinois Supreme Court did not expressly address the contentions that manslaughter by automobile could be proved without also proving a careless failure to reduce speed, and [the court is] reluctant to accept its rather cryptic remarks about the relationship between the two offenses involved here as an authoritative holding that under Illinois law proof of manslaughter by automobile would always involve a careless failure to reduce speed to avoid a collision." *Illinois* v. *Vitale*, supra, 447 U.S. 419. The United States Supreme Court remanded the case to the Illinois Supreme Court to determine whether, under Illinois statutes, as construed by the state's highest court, manslaughter always would require proof of failure to slow because, if it did not, the two offenses were not the same for *Blockburger* purposes. See id., 421.

[8] Although the information charges the defendant with capital felony, the statutory elements are the same for manslaughter in the first degree with the exception of the applicable mental state. Because the defendant references the description contained within the information, we address it here only to demonstrate the ultimate importance to the double jeopardy inquiry of the statutory elements of each offense.

[9] This court has identified two distinct prongs under § 53-21, namely, the situation prong and the act prong. See *State* v. *Padua*, 273 Conn. 138, 147–48, 869 A.2d 192 (2005). "The 'situation prong' refers to the language in [the statute that] provides that '[a]ny person who . . . wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired . . . shall be guilty of a class C felony . . . .'

"The 'act prong' refers to the language . . . that provides: 'or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony . . . .' " (Emphasis omitted.) *State* v. *Owens*, 100 Conn. App. 619, 635–36 n.12, 918 A.2d 1041, cert. denied, 282 Conn. 927, 926 A.2d 668 (2007).

[10] We note that, because the state did not provide the Appellate Court "with any authority that our legislature authorized separate penalties for the defendant's criminal offenses . . . [that court] defer[red] to the *Blockburger* presumption and conclude[d] that . . . the defendant's punishment cannot withstand constitutional scrutiny." *State* v. *Tinsley*, supra, 197 Conn. App. 325–26. On appeal, the state challenges the Appellate Court's allocation of the burden. Because we conclude that the two offenses are distinct under the *Blockburger* test, it is the defendant's burden to demonstrate contrary legislative intent.