# STATE OF CONNECTICUT *v.* GLENN JONES
## (AC 20990)

Mihalakos, Flynn and Stoughton, Js.

Argued December 11, 2001—officially released March 12, 2002

*Lisa J. Steele*, special public defender, for the appellant (defendant).

*C. Robert Satti, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Matthew C. Couloute, Jr.*, former assistant state's attorney, for the appellee (state).

STOUGHTON, J. The defendant, Glenn Jones, appeals from the judgment of conviction, rendered after a jury trial, of attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a (a), assault in the first degree in violation of General Statutes § 53a-59 (a) (5), conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a (a), reckless endangerment in the first degree in violation of General Statutes § 53a-63 (a), criminal possession of a firearm in violation of General Statutes § 53a-217 and carrying a pistol without a permit in violation of General Statutes § 29-35 (a). On appeal, Jones claims that the trial court improperly denied his motion for a new trial in which he claimed, inter alia, that the jury's verdict was legally inconsistent in violation of his constitutional right to a fair trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. For a number of years, Jones, codefendant Gary Bell[1] and the victim, Edward Beltran, all had been selling narcotics on the corner of Harral Avenue and James Street in Bridgeport. Sometime before July 17, 1998, Beltran was involved in a dispute with a drug seller who worked for Jones. Jones subsequently learned of the dispute. At about midnight on July 17, 1998, Beltran drove to Gonzalez's Grocery with his former girlfriend, Paula Cifaldi, to purchase some items. The store is located at the corner of Harral Avenue and James Street. Beltran parked in front of the store on James Street, exited his car and entered the store after briefly talking with one or more persons who were standing outside.

---

[1] Jones and Bell were tried in a joint trial. Bell was convicted of attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a (a), assault in the first degree in violation of General Statutes § 53a-59 (a) (5), conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a (a), and reckless endangerment in the first degree in violation of General Statutes § 53a-63 (a). Bell has filed a separate appeal.

Cifaldi, who remained in the car, recognized Jones, who was standing with a group of people in front of the store. After Beltran entered the store, Cifaldi overheard Jones say to an unidentified person: "All these n——s, they ain't gonna play me no more, they can't come around and do this to me no more, watch, you all see, you all see." At some point, Beltran came out to the car to check if Cifaldi was all right and then reentered the store. Sometime thereafter, Jones and Bell entered the store.

While Beltran was talking with a store employee, Jones stood behind Beltran and made a hissing sound. When Beltran turned to look at Jones, he shook his head and walked away. At that time, Bell was at the back of the store. Beltran continued talking with the store employee, unconcerned by Jones' conduct, but when he looked out the door and saw Jones and Bell standing together in front of the store, he felt uneasy.

As Beltran left the store to return to his car, Jones and Bell were blocking the front door of the store. Beltran walked around them without incident, but as he opened the driver's side door of the car, Jones and Bell, who were now standing on the sidewalk in front of the store, started firing handguns[2] at the car, shattering the front windshield. Beltran ducked down beside the car and told Cifaldi to get down. He then called out that he had been hit in the hope that Jones and Bell would stop firing. A period of silence followed, during which Beltran again attempted to get into the car and Cifaldi started to get up, thinking the shooting had ended. Jones and Bell began firing again, and Beltran crouched down and moved to the back of the car on the driver's side. Bell then jumped out into the middle

---

[2] At trial, Beltran testified that one of the guns was a Glock, which is a semiautomatic pistol manufactured by Glock, Inc. The state presented ballistics evidence that indicated that a Glock gun may have been used in the shooting.

of the street and fired at Beltran as he tried to hide behind the car. Bell shot Beltran five times, causing him to suffer wounds to his abdomen, right buttock, right thigh, right flank and left elbow.

After they stopped firing the second time, Jones and Bell fled the scene, running with guns in their hands along James Street toward Harral Avenue. Beltran managed to get into the car and drive to a nearby police station. At the station, he got out of the car and collapsed onto the ground. Soon thereafter, he was taken to a hospital, where he was treated for his gunshot wounds. Jones and Bell subsequently were arrested and charged in connection with the shooting.

After a jury trial, Jones was convicted of attempt to commit murder, assault in the first degree, conspiracy to commit murder, reckless endangerment in the first degree, criminal possession of a firearm and carrying a pistol without a permit. Prior to sentencing, Jones filed a motion for a judgment of acquittal and a motion for a new trial. The court denied both motions and sentenced Jones to a total effective term of twenty-six years imprisonment. This appeal followed. Additional facts will be set forth as necessary.

Before we address the defendant's claim, we first articulate the applicable standard of review. Our standard of review of the trial court's denial of a motion for a new trial is well established. "[A] motion for a new trial is addressed to the sound discretion of the trial court and is not to be granted except on substantial grounds. . . . The decision of the trial court is therefore reversible on appeal only if there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *McIntyre*, 250 Conn. 526, 533, 737 A.2d 392 (1999). Because Jones' claim involves a question of law, however, our review is plenary. See *State* v. *Morascini*, 62

Conn. App. 758, 761, 772 A.2d 703, cert. denied, 256
Conn. 921, 774 A.2d 141 (2001).

Jones claims that the court improperly denied his
motion for a new trial in which he claimed, inter alia,
that the jury's verdict was legally inconsistent in viola-
tion of his constitutional right to a fair trial.[3] We
disagree.

The following additional facts are necessary for our
resolution of Jones' claim. In his motion for a new trial,
Jones argued that his conviction for reckless endanger-
ment required the jury to find that he acted recklessly,
and his conviction for attempt to commit murder,
assault in the first degree and conspiracy to commit
murder required the jury to find that he acted intention-
ally. He further argued that the mental states required
for reckless endangerment and the specific intent
crimes charged are mutually exclusive and, therefore,
he could not be convicted of both because they concern
the same factual circumstances and the same victim. In
opposition, the state argued on the basis of the evidence
presented at trial that the jury reasonably could have
found that Jones acted with different mental states with
respect to Beltran at different times during the incident.
The court agreed with the state's position and accord-
ingly denied Jones' motion.[4]

---

[3] In his appellate brief, Jones, relying on *State* v. *Hinton*, 227 Conn. 301,
630 A.2d 593 (1993), identifies the right violated as his "state and federal
due process right to be acquitted unless proven guilty of each element of
the charged offense beyond a reasonable doubt."

[4] The court stated: "I have been involved in many cases where this circum-
stance has come up. And, the cases have been pretty uniform in the past
couple of years relating to this, that while it is true that a person normally
could not act with specific intent to cause a result and act recklessly at the
same time, there certainly could be situations where that would be present.

"And, I think one of those situations exists here because the evidence as
presented in this case, if you were to credit the evidence and the testimony
of the state's witnesses, would be to the effect that multiple shots were
fired at the victim while he was attempting to get into his car and after he
tried to get away from the shots and put himself in another position alongside
of the back of the car. In other words, some time elapsed between the first

To determine whether a jury verdict is legally inconsistent, "we look carefully to determine whether the existence of the essential elements for one offense negates the existence of the essential elements for another offense of which the defendant also stands convicted. If that is the case, the verdicts are legally inconsistent and cannot withstand challenge. . . . Put more simply, we determine if there is a rational theory by which the jury could have found the defendant guilty of both crimes." (Internal quotation marks omitted.) *State* v. *Johnson*, 65 Conn. App. 470, 484–85, 783 A.2d 1057, cert. denied, 258 Conn. 930, 783 A.2d 1031 (2001). "It is not inconsistent . . . to find that a criminal defendant possesses two different mental states, as long as [the] different mental states relate to different results." (Internal quotation marks omitted.) *State* v. *Morascini*, supra, 62 Conn. App. 762.

Jones relies primarily on *State* v. *King*, 216 Conn. 585, 583 A.2d 896 (1990), on appeal after remand, 218 Conn. 747, 591 A.2d 813 (1991), for the proposition that, under the facts of his case, he may be convicted of the reckless charge or the intentional charges, but not both.[5] Jones' reliance on *King* is misplaced.

and the last shot.

"And since an intent can be formed within seconds, it is possible that [Jones] could be found to have acted with an intent to cause injury as well as an attempt to cause death, and also to have been acting recklessly at some point in time during that scenario.

"Again, this is not a single act that we are talking about. It is a single series of events and conduct, but as indicated, people can form intentions within seconds and can act recklessly within seconds.

"I find that it is perfectly proper for the jury to have . . . reached the conclusions that it did. The court does not make a determination as to whether . . . I would have reached the same conclusions, that is not my position.

"So long as there is evidence presented covering the elements of each of the crimes . . . I will not interfere with that."

[5] In his appellate brief, Jones also distinguishes *State* v. *Hinton*, 227 Conn. 301, 630 A.2d 593 (1993), and *State* v. *Flynn*, 14 Conn. App. 10, 539 A.2d 1005, cert. denied, 488 U.S. 891, 109 S. Ct. 226, 102 L. Ed. 2d 217 (1988).

In *Hinton*, our Supreme Court addressed the issue of whether a person

In *King*, the defendant was charged with the crimes of attempt to commit murder and assault in the first degree. Both counts were predicated on the same act carried out against the same victim. Id., 593. While the charge of attempt to commit murder required proof that the defendant intended to cause the victim's death, the assault charge, as set forth in the information, required proof that the defendant recklessly created a risk of death to the victim. Id. Our Supreme Court, noting that the statutory definitions of 'intentionally' and 'recklessly' are mutually exclusive, vacated the conviction of assault in the first degree and attempt to commit murder, and ordered a new trial on both counts.

could intentionally assault one victim and, in the same action, recklessly assault another victim. The defendant was convicted of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and (2), which requires that the defendant act intentionally, and assault in violation of § 53a-59 (a) (3), which requires that the defendant act recklessly. The court stated that the guilty verdict could be reconciled. "The jury could reasonably have concluded that, in attempting to injure or disfigure someone standing near [the victim], the defendant acted recklessly toward [the victim] and therefore recklessly caused injury to [the victim], satisfying the elements of subdivision (3). Although we said in *State* v. *King*, supra, [216 Conn. 585], that a person could not act intentionally and recklessly with regard to the same act and the same result, *here we have two different victims and therefore two different results.* The jury therefore could reasonably have found that when the defendant fired the shotgun at the group of ten to fifteen young men on the sidewalk, causing eight pellets to be fired, he intended to injure one or more of them and was reckless with regard to the rest, including [the victim]." (Emphasis added.) *State* v. *Hinton*, supra, 227 Conn. 314–15.

"In *Flynn*, the defendant was convicted of, inter alia, assault on a police officer, which requires intentional conduct, and reckless endangerment, which requires reckless conduct. . . . The convictions resulted from an incident where the defendant, in a crowded bar, threw a beer bottle at several police officers. . . . On appeal, the defendant claimed that the verdict was inconsistent, as he could not have acted intentionally and recklessly with regard to the same factual circumstances. . . . This court concluded that the verdict was not inconsistent because the mental states went to different results. Accordingly, the jury could have found that, by throwing the bottle at the police officers, the defendant acted intentionally with the conscious objective to prevent the officers from performing their duty, while at the same time, he acted recklessly with respect to the other patrons in the bar." (Citations omitted.) *State* v. *Morascini*, supra, 62 Conn. App. 762.

Id., 603–604. The court reasoned that "[w]here a determination is made that one mental state exists, to be legally consistent the other must be found not to exist. . . . *By no rational theory could the jury have found the defendant guilty of both crimes.* . . . Logically then, the jury verdicts convicting the defendant of two offenses each of which requires a mutually exclusive and inconsistent state of mind as an essential element for conviction cannot stand." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 594.

In the present case, the guilty verdict is distinguishable from that in *King* because the jury here was not required to find that Jones possessed the relevant mental states simultaneously with respect to his acts against Beltran. See *State* v. *Fernandez*, 27 Conn. App. 73, 94, 604 A.2d 1308, cert. denied, 222 Conn. 904, 606 A.2d 1330 (1992). Where, as here, there are multiple shots fired, a pause, and then more shots fired, the jury reasonably could have found that Jones committed one act or group of acts with one mental state and a second act or group of acts with a different mental state. See *State* v. *Hawthorne*, 61 Conn. App. 551, 555, 764 A.2d 1278 (2001); *State* v. *Glover*, 40 Conn. App. 387, 395, 671 A.2d 384, cert. denied, 236 Conn. 918, 673 A.2d 1145 (1996). Indeed, there is a compelling case for finding that Jones' and Bell's actions constituted "different crimes that occurred on an escalating continuum." *State* v. *Mooney*, 61 Conn. App. 713, 722, 767 A.2d 770, cert. denied, 256 Conn. 905, 772 A.2d 598 (2001); see also *State* v. *Fernandez*, supra, 94. For example, the jury reasonably could have found that when Jones and Bell fired the first fusillade of shots that shattered the windshield of Beltran's car, they acted not with the specific intent to kill or injure Beltran, but rather with reckless indifference to Beltran's safety. The jury reasonably could have found, however, that Jones' and Bell's men-

tal states had changed to an intent to kill or seriously injure Beltran when they resumed firing after Beltran called out that he was hit and there was a pause in the shooting. That change in mental state is evinced by Bell's jumping out into the street, presumably to get a better shot at Beltran, and then firing several shots directly at Beltran, hitting him repeatedly.[6]

Although the parties presented two different scenarios of the incident, the jury chose to accept the state's version and to reject Jones'. In such cases, we defer to the jury's assessment of credibility. See *State* v. *Barber*, 64 Conn. App. 659, 666, 781 A.2d 464, cert. denied, 258 Conn. 925, 783 A.2d 1030 (2001). "On issues where the evidence allows room for reasonable differences of opinion among fair-minded people, if the conclusion of the jury is one that reasonably could have been reached, it must stand even though the trial court [and this court] might have reached a different result. . . . A verdict should not be set aside . . . where it is apparent that there was some evidence on which the jury might reasonably have reached its conclusion." (Internal quotation marks omitted.) *Weiss* v. *Bergen* 63 Conn. App. 810, 813–14, 779 A.2d 195, cert. denied, 258 Conn. 908, 782 A.2d 1254 (2001).

Because the jury was not required to find that Jones possessed two different mental states simultaneously with respect to his acts against Beltran, its verdict was not legally inconsistent. See *State* v. *Glover*, supra, 40 Conn. App. 395. We therefore conclude, on the basis of the evidence presented at trial, that the jury reasonably

---

[6] Jones and Bell were charged both as principals and as accessories in each of the charges. "To be found guilty of accessorial liability under [General Statutes] § 53a-8, this statute requires proof of a dual intent: that the accessory have the intent to *aid* the principal *and* that in so aiding he intend to *commit* the offense with which he is charged." (Emphasis in original; internal quotation marks omitted.) *State* v. *Ortiz*, 47 Conn. App. 333, 345, 705 A.2d 554 (1997), cert. denied, 244 Conn. 902, 710 A.2d 175 (1998).

could have found that Jones acted with different mental states with respect to Beltran at different times during the incident. Accordingly, the court properly denied Jones' motion for a new trial.

The judgment is affirmed.

In this opinion the other judges concurred.