******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# STATE OF CONNECTICUT *v.* JUNY OSCAR ABRAHAM
## (SC 20314)

McDonald, D'Auria, Mullins, Kahn, Ecker and Keller, Js.

*Syllabus*

Convicted of home invasion, attempt to commit assault in the first degree, reckless endangerment in the first degree, and risk of injury to a child, the defendant appealed to this court. The victim, V, and his neighbor, M, were sitting on the front porch of the two family home in which they resided, when they saw a man dressed in black jeans and a black hoodie approach them while pulling his hood over his head and a mask over his face. The masked man pulled out a pistol, and V and M fled. V ran into the house and up the stairs to his second floor apartment. V closed and locked his front door, but the masked man kicked it open and entered the apartment while waving his pistol and yelling, "where is the little motherfucker?" V snuck down the stairs and yelled back at the masked man to lure him away from his wife and two sons, who also were inside the apartment. The masked man followed V down the stairs, where V, who was standing on the sidewalk, pulled out his own lawfully concealed pistol and instructed the masked man to drop his weapon. Instead, the masked man raised his pistol and shot one time. V then returned fire, striking the masked man at least once. The masked man then went around the side of the house and collapsed near a bulkhead door. V followed him but was almost struck by a gray Nissan truck that was fleeing the area. Although nobody could identify the masked man to the police, the police stopped a gray Nissan truck matching the description provided by V and M shortly thereafter. The defendant was a passenger in that truck, was wearing khaki pants and a white T-shirt, and was suffering from a recently inflicted gunshot wound. The police never recovered the masked man's pistol, black clothing, or mask, but DNA testing revealed that blood found on the sidewalk and the bulkhead door near where the masked man collapsed belonged to the defendant. At the defendant's trial, defense counsel moved for a judgment of acquittal on the ground that all of the eyewitnesses had identified the masked man's clothing as black, which was not what the defendant was wearing when he was apprehended shortly after the shooting. The trial court denied the motion, concluding that the evidence was sufficient for the jury to find the defendant guilty beyond a reasonable doubt. The jury returned a guilty verdict, and defense counsel renewed the motion for a judgment of acquittal. The court denied the motion and rendered judgment in accordance with the verdict, from which the defendant appealed to this court. *Held*:

1. The state adduced sufficient evidence for the jury to find beyond a reasonable doubt that the defendant was the perpetrator of the crimes of conviction: the defendant's blood was found by the bulkhead door in the exact location where the masked man collapsed after being shot, the defendant was apprehended only five minutes from the scene of the shooting while suffering from a recently inflicted gunshot wound, and the truck in which he was apprehended was registered to the defendant, was seen by V and M driving past their house multiple times earlier that day, and matched the description V and M provided of the vehicle fleeing the scene immediately after the shooting; moreover, the jurors were permitted to rely on their common knowledge and experience that criminals often discard inculpatory evidence when they flee the scene of a crime to infer that the defendant had discarded the black clothing, mask, and pistol used in the commission of the crimes as he fled; furthermore, the fact that were was no evidence of the defendant's motive was inconsequential, as it is well established that motive is not an element of the crimes charged and that proof of motive is not necessary to support a conclusion of guilt that is otherwise sufficiently established.

2. The jury's verdict of guilty of the crimes of attempt to commit assault in the first degree and reckless endangerment in the first degree was not

legally inconsistent, as the jury reasonably could have found that the defendant's conduct constituted two different criminal acts, each of which was committed with a distinct and mutually exclusive mental state: the jury reasonably could have found that the defendant first acted with the conscious objective to inflict serious physical injury on V when he chased V up the stairs, broke down his door, and entered his apartment while yelling and waving a pistol; moreover, based on the change in location, the amount of time separating the acts, and V's intervening conduct, the jury reasonably could have found that the defendant committed a second, discrete criminal act when, after exiting the apartment, he fired a single shot at V after V confronted him, as the jury could have found that V's act of pulling out his own pistol and V's refusal to comply with the defendant's demands prompted the defendant to modify his own intention and to fire a warning shot at V in reckless disregard of the risk of inflicting serious physical injury on V.

3. The defendant could not prevail on his unpreserved claim that his convictions of home invasion and attempt to commit assault in the first degree violated the constitutional prohibition against double jeopardy, as those offenses do not constitute the same offense for double jeopardy purposes: although the defendant's convictions of home invasion and attempt to commit assault in the first degree were both necessarily predicated on the defendant's conduct in chasing V up the stairs, breaking down his door, and entering his apartment while brandishing a pistol, and, therefore, arose from the same act or transaction, home invasion, which requires proof that the defendant entered or remained unlawfully in a dwelling while a person other than a participant in the crime was present, and attempt to commit assault in the first degree, which requires proof that the defendant took a substantial step in a course of conduct planned to cause serious physical injury to another person by means of a deadly weapon or a dangerous instrument, each contain an element that the other does not; accordingly, it was possible to commit one of those offenses without committing the other.

Argued December 13, 2021—officially released May 31, 2022

*Procedural History*

Amended information charging the defendant with two counts of the crime of risk of injury to a child and with one count each of the crimes of home invasion, attempt to commit assault in the first degree, and reckless endangerment in the first degree, brought to the Superior Court in the judicial district of Fairfield and tried to the jury before *E. Richards, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*Megan L. Wade*, assigned counsel, with whom was *Emily Graner Sexton*, assigned counsel, for the appellant (defendant).

*Brett R. Aiello*, deputy assistant state's attorney, with whom, on the brief, were *Ann P. Lawlor*, senior assistant state's attorney, and *Joseph T. Corradino*, state's attorney, for the appellee (state).

*Opinion*

ECKER, J. Following a jury trial, the defendant, Juny Oscar Abraham, was convicted of home invasion in violation of General Statutes § 53a-100aa (a) (2), attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 and 53a-59 (a) (1), reckless endangerment in the first degree in violation of General Statutes § 53a-63 (a), and two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (1). On appeal, the defendant raises three claims: (1) the evidence was insufficient to establish his identity as the perpetrator of the crimes of conviction; (2) the jury's verdict of guilty of attempt to commit assault in the first degree and reckless endangerment was legally inconsistent; and (3) his conviction of home invasion and attempt to commit assault in the first degree violates the double jeopardy clause of the United States constitution. We affirm the judgment of conviction.

The jury reasonably could have found the following facts. The victim, Israel Alvarez, lived with his wife and four children in the second floor apartment of a two family home located at 903 Kossuth Street in Bridgeport. At approximately 5 p.m. on September 21, 2017, the victim and his first floor neighbor, Israel Martin, were sitting on the front porch of the home when they noticed a light-skinned man dressed in black jeans and a black hoodie approaching them. As he approached, the man pulled his hood up over his head and a black mask over his mouth and nose, leaving only his eyes visible. He also pulled out a silver nine millimeter Sig Sauer pistol, which he cocked as he approached.

Martin jumped off the porch and ran around to the back of the building, while the victim ran into the house through the front door and up the stairs to his second floor apartment. As he ran upstairs, the victim encountered his eight year old son walking downstairs. The victim told his son to run, and, seeing the masked man chasing his father, he complied. The victim's eight year old son ran upstairs to his room and hid under the bed.

The victim entered his apartment and locked the door behind him, but, moments later, the masked gunman kicked it open. The victim hid behind the open door, while the masked gunman entered the living room of the apartment waving his pistol and yelling, "where is the little motherfucker . . . ." Curious about the commotion, the victim's wife and fourteen year old son entered the living room and saw the masked gunman. During the ensuing tumult, the victim snuck halfway down the stairs and yelled, "I'm right here, motherfucker," in an effort to lure the gunman away from his family. The gunman exited the second floor apartment and followed the victim down the stairs.

The victim ran out of the building onto the sidewalk, where he withdrew his lawfully concealed .40 caliber

pistol from its holster and repeatedly instructed his pursuer to drop his weapon.[1] The masked gunman, who was standing in the doorway of the building at this point, raised his own pistol and said, "get over here now, motherfucker." The masked gunman then shot his pistol once, and the victim returned fire, shooting toward the masked gunman three or four times. At least one of the victim's bullets struck the masked gunman, who stumbled off the porch, went around to the side of the building, and collapsed by the bulkhead door.

After hearing gunshots, the victim's wife and fourteen year old son ran outside to check on the victim. The victim embraced his wife and then walked toward Shelton Street to look for the masked gunman. On Shelton Street, a charcoal gray Nissan Titan truck almost struck the victim as it fled the area. The victim could not see who was inside of the truck, but both he and Martin recognized it as the same truck that had driven by their building multiple times earlier in the day.

The police responded to the shooting at 903 Kossuth Street within minutes. Neither the victim, his family, nor Martin was able to identify the masked gunman, but the victim and Martin provided the police with a description of the gray truck that had fled the scene. Shortly thereafter, the police stopped a gray Nissan Titan truck at the intersection of Barnum and Central Avenues, which is approximately five minutes from 903 Kossuth Street. The defendant, who was wearing khaki pants and a white T-shirt, was a passenger in the truck and the registered owner of the vehicle. The defendant was suffering from a recently inflicted gunshot wound and was transported by ambulance to Bridgeport Hospital for immediate medical treatment.

The police never recovered the nine millimeter pistol wielded by the masked gunman or the black clothing and mask that he wore. During their investigation at 903 Kossuth Street, however, the police discovered four .40 caliber shell casings, all of which had been fired by the victim's pistol.[2] One nine millimeter shell casing also was found. Additionally, the police found blood on the sidewalk, back door, and bulkhead door. Subsequent DNA testing revealed that the blood was the defendant's.

The defendant was arrested and charged with home invasion, attempt to commit assault in the first degree, reckless endangerment in the first degree, and two counts of risk of injury to a child. At the defendant's jury trial, defense counsel moved for a judgment of acquittal, arguing that all of the eyewitnesses had identified the clothing worn by the masked gunman as black but that the defendant was wearing khaki pants and a white T-shirt when he was apprehended by the police shortly after the shooting. The trial court denied the motion, concluding that the evidence was sufficient for the jury to find the defendant guilty beyond a reasonable doubt.

The jury found the defendant guilty of the crimes charged. Prior to sentencing, defense counsel renewed the motion for a judgment of acquittal, again arguing that the evidence of guilt was insufficient because the defendant's clothing did not match the clothing of the perpetrator. The trial court denied the motion, rendered judgment in accordance with the jury's verdict, and sentenced the defendant to a total effective sentence of thirty years of incarceration.[3] This appeal followed.[4]

I

The defendant first claims that the evidence was insufficient to support his conviction because none of the eyewitnesses identified him as the perpetrator, no evidence was produced as to his motive for the commission of the crimes, and he was not wearing black clothing or armed with a pistol when he was apprehended by the police shortly after the shooting. We reject this claim.

"[T]he question of identity of a perpetrator of a crime is a question of fact that is within the sole province of the jury to resolve." *State* v. *Jackson*, 257 Conn. 198, 206, 777 A.2d 591 (2001). To determine whether the evidence was sufficient to establish the essential element of identity, "we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom, the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt . . . . In doing so, we are mindful that the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier [of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Citation omitted; internal quotation marks omitted.) *State* v. *Hughes*, 341 Conn. 387, 397–98, 267 A.3d 81 (2021).

When reviewing the sufficiency of the evidence, we must "focus on the evidence presented, not the evidence that the state failed to present . . . ." *State* v. *Davis*, 324 Conn. 782, 798, 155 A.3d 221 (2017). Additionally, we do not draw a "distinction between direct and circumstantial evidence so far as probative force is concerned . . . . Indeed, [c]ircumstantial evidence . . . may be more certain, satisfying and persuasive than direct evidence." (Citation omitted; internal quotation marks omitted.) *State* v. *Jackson*, supra, 257 Conn. 206. "It is not one fact . . . but the cumulative impact of a multitude of facts [that] establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Seeley*, 326 Conn. 65, 73, 161 A.3d 1278 (2017).

We conclude that the evidence adduced by the state

was more than sufficient to establish the defendant's identity as the perpetrator of the crimes of conviction. The defendant's blood was found outside of 903 Kossuth Street in the exact location where the masked gunman collapsed after he had been shot.[5] The defendant was apprehended only five minutes away from the shooting suffering from a recently inflicted gunshot wound. Additionally, the defendant was found in a gray Nissan Titan truck, which matched the description of the vehicle seen fleeing the scene immediately after the shooting. The Nissan Titan truck was registered to the defendant and was observed driving past 903 Kossuth Street multiple times earlier that day.

Notwithstanding the foregoing evidence, the defendant contends that the jury could not reasonably have found that he was the masked gunman because it was speculative for the jury "to infer that the defendant, who had no connection to [the victim] and no motive to commit these crimes, was shot by [the victim], got into his truck parked nearby, and at some point between 903 Kossuth Street and the intersection of Barnum and Central Avenues (less than five minutes away), despite suffering a gunshot wound, was able to remove black pants, a black hooded sweatshirt, and a black facial covering, and dispose of the clothing and weapon . . . ." This argument is without merit. "In deciding cases . . . [j]urors are not expected to lay aside matters of common knowledge or their own observations and experiences, but rather, to apply them to the facts as presented to arrive at an intelligent and correct conclusion. . . . Indeed, [i]t is an abiding principle of jurisprudence that common sense does not take flight when one enters a courtroom." (Citation omitted; internal quotation marks omitted.) *State* v. *Otto*, 305 Conn. 51, 70 n.17, 43 A.3d 629 (2012). Common knowledge and experience inform us that people often discard inculpatory evidence, such as distinctive clothing or weapons, when they flee the scene of a crime. See, e.g., *State* v. *Jordan*, 314 Conn. 354, 384, 102 A.3d 1 (2014) ("[the defendant] discarded his clothing and mask while being closely pursued by a police officer"); *State* v. *Hazard*, 201 Conn. App. 46, 56, 240 A.3d 749 (evidence was sufficient to establish identity in part because police found abandoned clothing near site of robbery, which matched clothing worn by perpetrator, and "[a] forensic analysis revealed [that the abandoned clothing contained] the defendant's 'entire genetic profile' "), cert. denied, 336 Conn. 901, 242 A.3d 711 (2020). The jury was permitted to rely on this common knowledge and experience to infer that the defendant discarded the black clothing, mask, and pistol used to commit the charged crimes as he fled 903 Kossuth Street in his gray Nissan Titan truck.[6] With regard to motive, the existence or absence of a motive often is used at trial to construct a narrative of guilt or innocence. In the present case, there was no evidence of the defendant's motive, but

it is well established that "[m]otive is not an element of the crime[s] charged [and, therefore] . . . [p]roof of motive is never necessary to support a conclusion of guilt otherwise sufficiently established, however significant its presence or absence, or its sufficiency, may be as bearing [on] the issue of guilt or innocence." (Internal quotation marks omitted.) *State* v. *Copas*, 252 Conn. 318, 337, 746 A.2d 761 (2000). Accordingly, we conclude that the evidence was sufficient for the jury to find beyond a reasonable doubt that the defendant was the masked gunman who committed the crimes of home invasion, attempt to commit assault in the first degree, reckless endangerment, and risk of injury to a child.

## II

The defendant next claims that the jury returned a legally inconsistent verdict in connection with the crimes of attempt to commit assault in the first degree and reckless endangerment because it necessarily found that the defendant acted with two different and mutually exclusive mental states with respect to the same conduct, victim, and statutory result. Specifically, the defendant argues that the jury's factual finding that he intended to cause serious physical injury to the victim, in violation of the statutes prohibiting attempt to commit assault in the first degree; see General Statutes §§ 53a-49[7] and 53a-59 (a) (1);[8] was irreconcilable with its factual finding that he recklessly engaged in conduct that created a risk of serious physical injury to the victim, in violation of the reckless endangerment statute. See General Statutes § 53a-63 (a).[9] Because the defendant could not have acted both intentionally and recklessly at the same time with respect to the same victim and the same statutory result, the defendant contends that the jury's finding of guilt with respect to both counts was legally inconsistent, thereby violating his due process right to a fair trial.[10]

The state does not dispute that, as charged in the present case, the crimes of attempt to commit assault in the first degree and reckless endangerment required proof of mutually exclusive mental states with respect to the same victim (Alvarez) and the same statutory result (serious physical injury). The state claims, however, that the defendant's conviction of both offenses was not predicated on the same conduct but, instead, on two different criminal acts. The first criminal act was when the defendant, while brandishing a loaded and cocked pistol, chased the victim up the stairs and broke into his home, and the second criminal act occurred when the defendant later fired his pistol at the victim outside of 903 Kossuth Street following a standoff.[11] We agree with the state.

The following legal principles govern our review. "A claim of legally inconsistent convictions, also referred to as mutually exclusive convictions, arises when a

conviction of one offense requires a finding that negates an essential element of another offense of which the defendant also has been convicted. . . . In response to such a claim, we look carefully to determine whether the existence of the essential elements for one offense negates the existence of [one or more] essential elements for another offense of which the defendant also stands convicted. If that is the case, the [convictions] are legally inconsistent and cannot withstand challenge [under the due process clause]. . . . Whether two convictions are mutually exclusive presents a question of law, over which our review is plenary. . . . When a jury has returned legally inconsistent verdicts, there is no way for the reviewing court to know which charge the jury found to be supported by the evidence. . . . Accordingly, the court must vacate both convictions and remand the case to the trial court for a new trial." (Citation omitted; internal quotation marks omitted.) *State* v. *Alicea*, 339 Conn. 385, 390–91, 260 A.3d 1176 (2021).

In *Alicea*, we identified the circumstances under which a conviction of a crime involving an intentional mental state is legally inconsistent with a conviction of a crime involving a reckless mental state. We explained "that the statutory definitions of intentionally and recklessly are mutually exclusive and inconsistent" because "[i]ntentional conduct requires the defendant to possess a *conscious objective* . . . *to cause* the result described in the statute defining the offense," whereas "reckless conduct requires that the defendant is aware of and *consciously disregards* a substantial and unjustifiable risk that the result described in the statute will occur. . . . Thus, a reckless mental state is inconsistent with an intentional mental state because one who acts recklessly does not have a conscious objective to cause a particular result." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id., 391–92. At the same time, "[w]e have held . . . that convictions involving both intentional and reckless mental states are legally consistent in certain circumstances. For example, when each mental state pertains *to a different act*, a different victim . . . a different injury," or "a different result." (Emphasis altered.) Id., 392.

In the present case, the state does not dispute that the defendant's convictions of attempt to commit assault in the first degree and reckless endangerment pertain to the same victim and the same statutory result; instead, the state argues that they pertain to "different act[s] . . . ." Id. We agree. The analysis is straightforward. If the jury reasonably could have found that the defendant's conduct amounted to two different acts, each of which was committed with a separate and distinct mental state, then the jury's verdict is not legally inconsistent. See, e.g., *State* v. *King*, 321 Conn. 135, 144, 136 A.3d 1210 (2016) (defendant's convictions of reckless and intentional assault were not inconsistent

because "the jury reasonably could have found that the defendant's conduct amounted to two separate acts"); *State* v. *Rios*, 171 Conn. App. 1, 13, 16, 156 A.3d 18 (defendant's convictions of assault in first degree, assault in second degree, and reckless endangerment were not inconsistent because "the jury reasonably could have concluded that the defendant's conduct amounted to two distinct criminal acts in which he possessed otherwise mutually exclusive mental states"), cert. denied, 325 Conn. 914, 159 A.3d 232 (2017); *State* v. *Kuranko*, 71 Conn. App. 703, 714–15, 803 A.2d 383 (2002) (defendant's convictions of assault in third degree and reckless endangerment were not inconsistent because jury reasonably could have found that defendant's mental state changed between first attack on victim and subsequent assault); *State* v. *Jones*, 68 Conn. App. 562, 566, 569, 792 A.2d 148 (defendant's convictions of attempt to commit murder, assault in first degree, conspiracy to commit murder, and reckless endangerment were not inconsistent because "the jury reasonably could have found that [the defendant] committed one act or group of acts with one mental state and a second act or group of acts with a different mental state"), cert. denied, 260 Conn. 917, 797 A.2d 515 (2002); *State* v. *Mooney*, 61 Conn. App. 713, 718, 722, 767 A.2d 770 (The defendant's convictions of assault in the first degree and robbery in the first degree were not inconsistent because "the jury . . . was not required to find that the different acts committed by the defendant were in effect one act, with one mental state. The jury was free to conclude that the defendant's actions constituted different crimes that occurred on an escalating continuum. Indeed, there is a compelling case for finding that the defendant committed multiple criminal acts against the same victim."), cert. denied, 256 Conn. 905, 772 A.2d 598 (2001).

In the context of our assault statutes, whether a defendant's illegal conduct constitutes a single continuous course of criminal conduct or discrete, severable criminal acts is a fact intensive inquiry. See *State* v. *Ruiz-Pacheco*, 336 Conn. 219, 238–39, 244 A.3d 908 (2020); see also *State* v. *Nash*, 316 Conn. 651, 663, 114 A.3d 128 (2015) ("courts reviewing a claim of legal inconsistency must closely examine the record to determine whether there is any plausible theory under which the jury reasonably could have found the defendant guilty of both offenses"). In conducting this inquiry, we consider the following factors: "(1) the amount of time separating the acts; (2) whether the acts occurred at different locations; (3) [evidence pertinent to] the defendant's intent or motivation behind the acts; and (4) whether any intervening events occurred between the acts, such that the defendant had the opportunity to reconsider his actions."[12] *State* v. *Ruiz-Pacheco*, supra, 241; see *State* v. *King*, supra, 321 Conn. 144 (concluding that there were two different criminal acts because

intervening event precipitated change in defendant's intent); *State* v. *Kuranko*, supra, 71 Conn. App. 714–15 (concluding that there were two different criminal acts due to change in location that precipitated change in defendant's intent); *State* v. *Jones*, supra, 68 Conn. App. 569–70 (concluding that there were two different criminal acts because "there was a pause in the shooting" that precipitated change in defendant's intent).

Applying these factors to the facts of the present case, we conclude that the jury reasonably could have found that the defendant committed two different criminal acts with two distinct mental states. First, the defendant chased the victim upstairs, broke down the door to the victim's apartment, and entered the apartment yelling, "where is the little motherfucker," while waving a loaded and cocked pistol. On the basis of this conduct, the jury reasonably could have found that the defendant committed the crime of attempt to commit assault in the first degree because the defendant had the conscious objective to inflict serious physical injury on the victim, in violation of §§ 53a-49 and 53a-59 (a) (1).[13] The jury also could have found that a second, discrete crime occurred after the defendant exited the victim's apartment. At that point, the victim confronted the defendant outside of 903 Kossuth Street, pointed his own loaded gun at the defendant, and taunted him by yelling, "I'm right here, motherfucker." The jury reasonably could have found that the victim's refusal to comply with the defendant's command to "get over here now, motherfucker," combined with his change of strategy from flight to armed challenge, prompted the defendant to modify his own intention by firing a warning shot at the victim in reckless disregard of the risk of serious physical injury to the victim. The change in location, temporal division between the defendant's initial interaction with the victim and the ultimate standoff, and the intervening conduct of the victim all functioned to separate the defendant's criminal conduct into two discrete and severable criminal acts. See, e.g., *State* v. *Cody M.*, 337 Conn. 92, 109, 259 A.3d 576 (2020) ("the defendant's statements constitute two distinct acts because the victim's resistance, effectuated by her silence, was an intervening event causing the defendant to escalate his behavior"); *State* v. *Ruiz-Pacheco*, supra, 336 Conn. 244 (during seventy second fight, "the distinct break in the fighting, the clear opportunity provided by that intervening period of time and physical separation for the defendant to reconsider his actions, and the evidence establishing a separate and distinct criminal intent behind the final stabbing [made those] acts sufficiently distinct to constitute two separate courses of assaultive conduct"). Because there is a "plausible theory under which the jury reasonably could have found the defendant guilty of both offenses"; *State* v. *Nash*, supra, 316 Conn. 663; we conclude that the jury's verdict was not legally inconsistent.

## III

Lastly, the defendant claims that his convictions of home invasion and attempt to commit assault in the first degree violate the constitutional prohibition against double jeopardy because they arose from the same act or transaction and constitute the same offense under *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). The state responds that the defendant's double jeopardy claim lacks merit because "[t]he charges of home invasion and attempt to commit first degree assault arose out of separate transactions and, alternatively, [because] each crime requires proof of an element that the other does not" under *Blockburger*.

The defendant did not preserve his double jeopardy claim in the trial court, so he seeks to prevail under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). We conclude that the defendant's claim is reviewable under the first two prongs of *Golding* because the record is adequate for review and the claim is of constitutional magnitude. See, e.g., *State* v. *Schovanec*, 326 Conn. 310, 325, 163 A.3d 581 (2017) (reviewing unpreserved double jeopardy claim under *Golding*); *State* v. *Wright*, 319 Conn. 684, 688–89, 127 A.3d 147 (2015) (same). The defendant's claim fails under the third prong of *Golding*, however, because his convictions of home invasion and attempt to commit assault in the first degree do not constitute the same offense for double jeopardy purposes.

It is well established that "[d]ouble jeopardy prohibits not only multiple trials for the same offense, but also multiple punishments for the same offense." (Internal quotation marks omitted.) *State* v. *Ruiz-Pacheco*, supra, 336 Conn. 226. "Double jeopardy analysis in the context of a single trial is a [two step] process, and, to succeed, the defendant must satisfy both steps. . . . First, the charges must arise out of the same act or transaction [step one]. Second, it must be determined whether the charged crimes are the same offense [step two]. Multiple punishments are forbidden only if both conditions are met. . . . At step two, we [t]raditionally . . . have applied the *Blockburger* test to determine whether two statutes criminalize the same offense, thus placing a defendant prosecuted under both statutes in double jeopardy: [When] the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact [that] the other does not." (Internal quotation marks omitted.) *State* v. *Tinsley*, 340 Conn. 425, 432, 264 A.3d 560 (2021).

As we explained in part II of this opinion, the defendant's criminal conduct can be separated into two different acts, each involving a distinct mental state: (1)

the act of chasing the victim up the stairs and invading the victim's apartment with the specific intent to inflict serious physical injury; and (2) the act of shooting toward the victim outside of 903 Kossuth Street with reckless disregard to the risk of serious physical injury to the victim. See, e.g., *State* v. *Ruiz-Pacheco*, supra, 336 Conn. 238–39 ("[t]o determine when one course of conduct ends (or is 'completed') and another begins for double jeopardy purposes, our case law looks to whether the defendant's acts took place at different times or locations, whether the defendant was motivated by different criminal intents, and whether the acts were interrupted by intervening events or circumstances"). Given the manner in which the case was charged, tried, and decided by the jury, the defendant's convictions of home invasion and attempt to commit assault in the first degree both necessarily were predicated on his conduct during the first sequence of events, involving the entry into the victim's home while brandishing a loaded and cocked pistol. See footnote 13 of this opinion and accompanying text; see also *State* v. *Porter*, 328 Conn. 648, 661–62, 182 A.3d 625 (2018) (to determine whether criminal conduct arises from same act or transaction at step one of double jeopardy analysis, courts may consider evidence adduced at trial, state's theory of case, and charging instrument). We therefore conclude that these two convictions arose from the same act or transaction.

We next examine the statutory elements of home invasion and attempt to commit assault in the first degree to determine whether each crime requires proof of an essential element that the other does not under *Blockburger*. See *State* v. *Tinsley*, supra, 340 Conn. 432. In conducting a *Blockburger* analysis, we consider only the statutory elements of the two offenses, as opposed to the evidence adduced at trial or the facts alleged in the state's charging document. See id., 445 ("[b]ecause the United States Supreme Court has declined to consider facts alleged in the information when conducting a *Blockburger* analysis, we decline to import that consideration into the double jeopardy analysis"); *State* v. *Porter*, supra, 328 Conn. 656 ("[t]his court has consistently held that the *Blockburger* test conducted at step two is a technical one and examines only the statutes, charging instruments, and bill of particulars as opposed to the evidence presented at trial" (internal quotation marks omitted)).

To prove the defendant guilty of home invasion in violation of § 53a-100aa (a) (2), the state was required to establish the following essential elements beyond a reasonable doubt: (1) the defendant entered or remained unlawfully in a dwelling; (2) a person other than a participant in the crime was actually present in the dwelling at the time; (3) the defendant intended to commit a crime therein; and (4) the defendant was armed with explosives, a deadly weapon, or a dangerous instrument.

See General Statutes § 53a-100aa (a) (2).[14] To prove the defendant guilty of attempt to commit assault in the first degree in violation of §§ 53a-59 (a) (1) and 53a-49, the state was required to establish the following essential elements beyond a reasonable doubt: (1) the defendant intended to cause serious physical injury to another person; and (2) he took a substantial step in a course of conduct planned to cause serious physical injury to another person by means of a deadly weapon or a dangerous instrument. See General Statutes §§ 53a-59 (a) (1) and 53a-49 (a) (2); footnotes 7 and 8 of this opinion. Both home invasion and attempt to commit assault in the first degree require proof of an essential element that the other does not. The crime of home invasion requires proof that the defendant entered or remained unlawfully in a dwelling while a person other than a participant in the crime actually is present, whereas the crime of attempt to commit assault in the first degree does not. In contrast, the crime of attempt to commit assault in the first degree requires proof that the defendant took a substantial step in a course of conduct planned to cause serious physical injury to another person by means of a deadly weapon or a dangerous instrument, whereas the crime of home invasion does not. Accordingly, we conclude that home invasion and attempt to commit assault in the first degree are not the same offense for double jeopardy purposes.

The defendant argues that the two crimes are the same offense under *Blockburger* because attempt to commit assault in the first degree was charged as the predicate offense for the defendant's home invasion conviction.[15] To support his claim, the defendant relies on *State* v. *Greco*, 216 Conn. 282, 579 A.2d 84 (1990), in which we concluded that felony murder and the predicate felony on which a felony murder conviction is based "constitute the 'same offense' as the felony murder charge under the *Blockburger* test." Id., 292. In arriving at this conclusion, we reasoned that the predicate felony was a lesser included offense of felony murder because it "was not possible to commit felony murder in the manner indicated in the indictment without having also committed [the underlying predicate offense]." Id. Given that "there are no elements [of the predicate offense that] are not also elements of felony murder"; id.; a defendant's conviction of both offenses would violate the prohibition against double jeopardy in the absence of "a clear indication of contrary legislative intent."[16] (Internal quotation marks omitted.) Id., 293; see also *State* v. *Burgos*, 170 Conn. App. 501, 550, 155 A.3d 246 (parties did not dispute "that sexual assault in the first degree and risk of injury to a child are legally the 'same offense' as aggravated sexual assault of a minor under the *Blockburger* test when . . . they are charged as predicate offenses for aggravated sexual assault of a minor"), cert. denied, 325 Conn. 907, 156 A.3d 538 (2017).

The defendant's reliance on *Greco* is misplaced because attempt to commit assault in the first degree is not a lesser included offense of home invasion. To be a lesser included offense, it must be impossible "to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser . . . ." *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980); see *State* v. *Tinsley*, supra, 340 Conn. 442 (under *Blockburger* test, charging documents may be "relevant to the court's analysis insofar as [they] identif[y] [a] predicate [offense]"). Although the state alleged in its charging document that the defendant had the specific intent to commit the crime of assault in the first degree when he entered or remained unlawfully in the victim's dwelling, it did not allege, nor was it required to prove, that the defendant actually committed or attempted to commit the crime of assault in the first degree. See footnote 15 of this opinion. Stated another way, the commission or attempted commission of a separate predicate offense is not an essential element of home invasion under subdivision (2) of § 53a-100aa (a); the crime is complete when a defendant enters or remains unlawfully in an occupied dwelling with intent to commit a crime therein while armed with an explosive, a deadly weapon, or a dangerous instrument. Cf. *State* v. *Greco*, supra, 216 Conn. 291–92 (to commit felony murder, defendant must commit predicate offense identified in state's charging document); *State* v. *Burgos*, supra, 170 Conn. App. 554 ("§§ 53-21 (a) (2) and 53a-70 (a) (2) are essential elements of § 53a-70c when they are charged as predicate offenses"). Because it is possible to commit the crime of home invasion without committing the crime of attempt to commit assault in the first degree, we conclude that home invasion in violation of § 53a-100aa (a) (2) and attempt to commit assault in the first degree in violation of §§ 53a-59 (a) (1) and 53a-49 are not the same offense under the *Blockburger* test.[17] Accordingly, we reject the defendant's double jeopardy claim.[18]

The judgment is affirmed.

In this opinion the other justices concurred.

[1] The victim had a valid pistol permit at the time of the event.

[2] One .40 caliber bullet also was found. Although the bullet had rifling characteristics similar to the defendant's pistol, it lacked the microscopic marks needed for identification.

[3] The trial court sentenced the defendant to thirty years of incarceration for the crime of home invasion and imposed the following concurrent sentences: twenty-five years for attempt to commit assault in the first degree, one year for reckless endangerment in the first degree, and fifteen years for each count of risk of injury to a child.

[4] The defendant appealed directly to this court pursuant to General Statutes § 51-199 (b) (3).

[5] At trial, Angela Przech, a forensic science examiner, testified that the blood "originated from a single individual male" and that the DNA profile found was "at least 100 billion times more likely to occur if it originated from [the defendant] than if it originated from an unknown individual."

[6] There was no evidence before the jury as to the location, nature, or severity of the defendant's injuries, and, therefore, it was not unreasonable for the jury to infer that the defendant was physically capable of changing

his clothing and abandoning his pistol despite suffering from a recently inflicted gunshot wound or wounds. See, e.g., *State* v. *Copas*, 252 Conn. 318, 340, 746 A.2d 761 (2000) ("in determining whether the evidence supports a particular inference, we ask whether that inference is so unreasonable as to be unjustifiable" (internal quotation marks omitted)).

[7] General Statutes § 53a-49 (a) provides in relevant part that "[a] person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[8] General Statutes § 53a-59 (a) provides in relevant part that "[a] person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[9] General Statutes § 53a-63 (a) provides that "[a] person is guilty of reckless endangerment in the first degree when, with extreme indifference to human life, he recklessly engages in conduct which creates a risk of serious physical injury to another person."

[10] The defendant did not preserve his legal inconsistency claim in the trial court and, therefore, seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). We conclude that the defendant's claim is reviewable under the first two prongs of *Golding* because the record is adequate for review and the claim is of constitutional magnitude. See *State* v. *Chyung*, 325 Conn. 236, 254 n.15, 157 A.3d 628 (2017) ("[i]n addition to implicating the constitutional due process right to notice of the nature of the charges against a defendant . . . legally inconsistent guilty verdicts implicate the constitutional due process right to proof beyond a reasonable doubt of every element of the charged offense" (citation omitted)); *State* v. *Nash*, 316 Conn. 651, 658 n.8, 114 A.3d 128 (2015) (reviewing unpreserved legal inconsistency claim under *Golding*). Nonetheless, for the reasons explained in this opinion, the defendant's claim fails under the third prong of *Golding* because his convictions are not legally inconsistent.

[11] The defendant claims that the state is precluded from raising this argument on appeal because the theory was not presented to the jury at trial. See, e.g., *State* v. *Alicea*, 339 Conn. 385, 400, 260 A.3d 1176 (2021) ("the theory of the case doctrine may be defensively incorporated into a legal inconsistency claim; that is, a defendant may preclude the state from relying on a novel factual theory of the case on appeal because a new theory cannot transform inconsistent verdicts into consistent ones if it was not presented to the jury at trial"); *State* v. *Chyung*, 325 Conn. 236, 255–56, 157 A.3d 628 (2017) (rejecting state's claim "that the jury reasonably could have found that the defendant engaged in two separate acts with two separate results" because "it never presented this theory to the jury during trial"); *State* v. *King*, 321 Conn. 135, 149, 136 A.3d 1210 (2016) ("[p]rinciples of due process do not allow the state, on appeal, to rely on a theory of the case that was never presented at trial"). We disagree. Our review of the record reveals that the crimes of attempt to commit assault in the first degree and reckless endangerment were charged, argued, and instructed in the conjunctive, meaning that the jury was not required to choose "one offense *or* the other." (Emphasis in original.) *State* v. *King*, supra, 150. During closing argument, the prosecutor proceeded on the theory that the defendant's criminal conduct could be separated into two different acts, either of which, standing alone, would be sufficient to support a conviction of attempt to commit assault in the first degree or reckless endangerment: (1) the act of chasing the victim up the stairs and invading his apartment with a loaded and cocked pistol; and (2) the act of shooting toward the victim outside of 903 Kossuth Street. For example, with respect to reckless endangerment, the prosecutor argued that "the evidence shows that the defendant, when he entered that home unlawfully with a firearm, placed everyone in that home—created a risk of serious physical injury. When he shot that gun out in front of the house, [he] created a risk of physical injury." The state also argued that the jury could find the defendant guilty of attempt to commit assault in the first degree because the defendant "chased [the victim] up the stairs, kicked open the door, entered [the victim's] apartment and then chased him back down the stairs," and also because "a nine millimeter shell casing was found at the scene." We therefore reject the defendant's claim that the state's theory on appeal "is inapposite to the way the [prosecutor] tried and summarized the case to the jury."

[12] *Ruiz-Pacheco* was a double jeopardy case, in which the defendant

alleged that his multiple assault convictions under the same statute with respect to the same victim violated his constitutional right to be free from multiple punishments. See *State* v. *Ruiz-Pacheco*, supra, 336 Conn. 225. To resolve the issue on appeal, we analyzed whether the defendant's assault convictions were based on two different criminal acts, i.e., whether there was a "single, uninterrupted fight"; id., 241; or "two separate courses of assaultive conduct." Id., 244. Although *Ruiz-Pacheco* was a double jeopardy case, we agree with the defendant that the factors enumerated therein apply to the "different acts" inquiry pertinent to a legal inconsistency claim.

[13] Alternatively, as the state argues in its brief, the jury reasonably could have found that the defendant acted in reckless disregard of the risk of serious physical injury to the victim, in violation of the reckless endangerment statute, § 53a-63 (a). Although the evidence supports the commission of either crime, we know that the jury determined that, during the initial sequence of events, the defendant acted with an intentional state of mind (rather than a reckless state of mind) because the jury found the defendant guilty of home invasion, which, as charged in the present case, required the state to prove beyond a reasonable doubt that the defendant "enter[ed] and remain[ed] unlawfully in a dwelling, with intent to commit a crime therein, to wit, assault in the first degree . . . ." See part III of this opinion. Because an essential element of assault in the first degree is the specific intent to inflict serious physical injury; see, e.g., *State* v. *Holmes*, 75 Conn. App. 721, 736–37, 817 A.2d 689, cert. denied, 264 Conn. 903, 823 A.2d 1222 (2003); the jury necessarily found that the defendant had the conscious objective to inflict serious physical injury when he invaded the victim's apartment. The defendant does not dispute that the evidence was sufficient to support the essential element of intent to inflict serious physical injury.

[14] General Statutes § 53a-100aa (a) provides in relevant part that "[a] person is guilty of home invasion when such person enters or remains unlawfully in a dwelling, while a person other than a participant in the crime is actually present in such dwelling, with intent to commit a crime therein, and, in the course of committing the offense . . . (2) such person is armed with explosives or a deadly weapon or dangerous instrument."

[15] We disagree with the defendant's characterization of the state's amended information. The state did not charge the defendant with attempt to commit assault in the first degree as a predicate offense of home invasion; instead, it charged that the defendant had the specific intent to commit the crime of assault in the first degree when he entered or remained unlawfully in the victim's dwelling. Specifically, in count one of the amended information accusing the defendant of home invasion, the state "charge[d] that . . . on or about the 21st day of September, 2017, at approximately 5:09 p.m., at or near 903 Kossuth Street . . . the [defendant] did enter and remain unlawfully in a dwelling, with intent to commit a crime therein, to wit, *assault in the first degree*, while [the victim] and others, who were not participants in the crime, were actually present in such dwelling, and the [defendant] was armed with a deadly weapon, to wit, a handgun, in violation of [§] 53a-100aa (a) (2) . . . ." (Emphasis added.).

In count two of the amended information, the state charged the defendant "with the crime of criminal attempt to commit assault in the first degree, and charge[d] that . . . on or about the 21st day of September, 2017, at approximately 5:09 p.m., at or near 903 Kossuth Street . . . the [defendant], with intent to cause serious physical injury to [the victim], did under circumstances as he believed them to be, acted in such a way as to constitute a substantial step in a course of conduct to cause serious physical injury to the [victim] with a deadly weapon, to wit, a handgun, in violation of [§] 53a-59 (a) (1) and [§] 53a-49 . . . ."

[16] As we explained in *Greco*, the *Blockburger* test is not dispositive of the double jeopardy inquiry. See *State* v. *Greco*, supra, 216 Conn. 292–93. "This is because [t]he role of the constitutional guarantee [against double jeopardy] is limited to [ensuring] that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense. . . . The issue, though essentially constitutional, becomes one of statutory construction." (Internal quotation marks omitted.) *State* v. *Bernacki*, 307 Conn. 1, 10, 52 A.3d 605 (2012), cert. denied, 569 U.S. 918, 133 S. Ct. 1804, 185 L. Ed. 2d 811 (2013). "[When] . . . a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the same conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." (Internal quotation marks omitted.) *State* v. *Greco*, supra, 293. In *Greco*, we concluded that "the legislature clearly intended multiple punishments

for felony murder and the predicate [offense on which a felony murder charge is based],'' and, therefore, conviction of both offenses did not violate the double jeopardy clause. Id.

[17] We recognize that the amended information alleges the same facts to support the defendant's commission of the crimes of home invasion and attempt to commit assault in the first degree. As we recently explained in *State* v. *Tinsley*, supra, 340 Conn. 428, however, we must confine our analysis to the statutory elements of the offenses under *Blockburger* and cannot consider the facts alleged in the state's information to determine whether the two offenses are greater and lesser included offenses for double jeopardy purposes. See id. (risk of injury to child, in violation of General Statutes (Rev. to 1995) § 53-21, is not lesser included offense of manslaughter in first degree, in violation of General Statutes § 53a-55 (a) (1), as amended by Public Acts 1995, No. 95-142, § 1, even though state alleged same factual predicate for each crime).

[18] ''[T]he *Blockburger* test creates only a rebuttable presumption of legislative intent, [and] the test is not controlling when a contrary intent is manifest. . . . When the conclusion reached under *Blockburger* is that the two crimes do not constitute the same offense, the burden remains on the defendant to demonstrate a clear legislative intent to the contrary.'' (Internal quotation marks omitted.) *State* v. *Schovanec*, supra, 326 Conn. 326. The defendant does not claim that the legislature clearly intended the crimes of home invasion and attempt to commit assault in the first degree to be treated as the same offense for double jeopardy purposes, even though they constitute separate offenses under the *Blockburger* test, and, therefore, we conclude that he has failed to fulfill his burden of establishing a double jeopardy violation. See *State* v. *Tinsley*, supra, 340 Conn. 445–46 (concluding that no double jeopardy violation existed because defendant had provided no authority for his claim that legislature intended to treat crimes of conviction as same offense for double jeopardy purposes, even though they constituted separate offenses under *Blockburger*); *State* v. *Miranda*, 260 Conn. 93, 127, 794 A.2d 506 (same), cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002).