******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* CHRISTON M.[*]
## (SC 20989)

McDonald, D'Auria, Ecker, Alexander,
Dannehy and Bright, Js.

### *Syllabus*

Convicted of numerous crimes, including home invasion and assault in the first degree by means of the discharge of a firearm, in connection with an incident in which the defendant entered a home and shot one of its occupants, the defendant appealed to this court. In the operative information, the state alleged in one of the counts that the defendant had violated the statute (§ 53a-100aa) proscribing home invasion by unlawfully entering the home of another, while other persons were present, and committing the felony of assault in the first degree against one of those persons. Although the state did not specify in the information that the defendant's conduct had violated a particular subsection of or subdivision within § 53a-100aa, the allegations in the home invasion count tracked the language set forth in subdivision (1) of § 53a-100aa (a), which requires proof that the defendant, in the course of committing the home invasion, committed a felony against the person of another. The trial court, however, instructed the jury in accordance with subdivision (2) of § 53a-100aa (a), which requires proof that the defendant, in the course of committing the home invasion, was armed with a deadly weapon. On appeal, the defendant claimed, inter alia, that the trial court had committed plain error when it instructed the jury on a theory of liability that was not charged in the information, in violation of his sixth amendment right to be informed of the nature and cause of the charges against him. *Held*:

The trial court did not commit plain error when it instructed the jury on the elements of home invasion in accordance with subdivision (2), rather than subdivision (1), of § 53a-100aa (a), the operative information having provided the defendant with adequate notice that he could be convicted under either of those subdivisions so as to enable him to prepare a defense and to avoid prejudicial surprise.

Although the home invasion count in the information tracked the language in § 53a-100aa (a) (1), it was not possible for the defendant to have committed home invasion in the manner described in that count without satisfying the elements of both subdivisions (1) and (2) of § 53a-100aa (a), insofar as the state was required to prove that the defendant was armed with a deadly weapon in order to show that he had committed first degree assault in the manner described in the home invasion count, and, accordingly, the defendant was

---

[*] In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2024); we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

on notice that he was subject to criminal liability under both subdivisions of § 53a-100aa (a).

Moreover, the state provided the defendant with constitutionally adequate notice of the home invasion offense, even though the information charged him with violating § 53a-100aa generally, as it was not necessary for the information to specify that the defendant's conduct violated a particular subsection or subdivision of the statute, and, if the defendant had any doubt as to whether the state's theory of liability encompassed either subdivision (1) or (2) of § 53a-100aa (a), or both subdivisions, it was incumbent on him to file a motion for a bill of particulars, which he failed to do.

Furthermore, to the extent that the allegations in the home invasion count were ambiguous as to whether the defendant was subject to criminal liability under either subdivision of § 53a-100aa (a), each remaining count in the information was predicated on the defendant's alleged possession and use of a deadly weapon inside of the home in which the invasion occurred, making it clear that the defendant would have to defend against that allegation at trial.

In addition, any error in the trial court's jury instructions due to the variance between the information and those instructions did not prejudice the defendant's defense to the home invasion charge, as there was nothing to suggest that his third-party culpability defense would have been different, or would have gained probative force, if the count of the information charging the defendant with home invasion had specifically alleged a violation of § 53a-100aa (a) (2).

The defendant could not prevail on his unpreserved claim that his convictions of home invasion in violation of § 53a-100aa (a) (2) and assault in the first degree by means of the discharge of a firearm in violation of the first degree assault statute (§ 53a-59 (a) (5)) violated the constitutional prohibition against double jeopardy, the defendant having failed to demonstrate the existence of a constitutional violation under the third prong of *State* v. *Golding* (213 Conn. 233), as modified by *In re Yasiel R.* (317 Conn. 773).

Home invasion and first degree assault with a firearm did not constitute the same offense for purposes of the double jeopardy clause under the test set forth in *Blockburger* v. *United States* (284 U.S. 299), as each offense requires proof of an essential element that the other does not.

Moreover, assault in the first degree was not a predicate offense for home invasion, and, accordingly, there was no possibility that the defendant was punished twice for first degree assault and home invasion.

Argued October 29, 2025—officially released January 13, 2026

*Procedural History*

Substitute information charging the defendant with two counts of the crime of risk of injury to a child and one count each of the crimes of assault in the first degree,

home invasion, criminal possession of a firearm, and threatening in the second degree, brought to the Superior Court in the judicial district of Hartford and tried to the jury before *K. Doyle*, *J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed*.

*Julia K. Conlin*, assigned counsel, with whom were *James P. Sexton*, assigned counsel, and, on the brief, *Emily Graner Sexton*, assigned counsel, for the appellant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *Sharmese L. Walcott*, state's attorney, and *Emily Trudeau*, senior assistant state's attorney, for the appellee (state).

*Opinion*

McDONALD, J. The defendant, Christon M., appeals directly to this court from the judgment of conviction, rendered after a jury trial, of one count each of assault in the first degree by means of the discharge of a firearm in violation of General Statutes § 53a-59 (a) (5), home invasion in violation of General Statutes § 53a-100aa (a) (2), criminal possession of a firearm in violation of General Statutes (Rev. to 2021) § 53a-217, and threatening in the second degree in violation of General Statutes § 53a-62, and two counts of risk of injury to a child in violation of General Statutes § 53-21. The defendant claims that the trial court violated his right under the sixth amendment to the United States constitution to be informed of the nature and cause of the accusations against him[1] by instructing the jury about a subdivision of the home invasion statute under which he was not charged. He further claims that his convictions of home invasion and first degree assault violate the double jeopardy clause of

[1] The sixth amendment right to notice is made applicable to the states through the due process clause of the fourteenth amendment to the United States constitution. E.g., *Faretta* v. *California*, 422 U.S. 806, 818, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

the fifth amendment to the United States constitution.[2] We affirm the judgment of conviction.

The jury reasonably could have found the following facts. On the evening of November 10, 2021, the defendant unlawfully entered the West Hartford home of R with the intention of shooting Dyquan Daniels, who recently had begun dating the defendant's ex-girlfriend, M. On the night in question, M, who is R's sister, and M's eleven year old daughter had gone to R's home for dinner. At approximately 9 p.m., the defendant entered the home through the backdoor and shot Daniels in the face. Upon hearing the gun blast, M, who was seated in the dining room, turned toward the kitchen and saw the defendant standing with a gun in his hand. The defendant told M to get on the floor or else he would shoot her too. He then fled through the backdoor.

R was in her bedroom with her nine year old daughter and M's daughter when the shooting occurred. Upon hearing the gunshot, she exited the room and was informed by M that the defendant had just shot Daniels. M immediately dialed 911 to report the shooting and to summon help. While speaking to the dispatcher, she once again identified the defendant as the shooter. M later informed each of the investigating officers that the shooter was her former boyfriend, the defendant.

That same night, the police located the defendant's car and followed it through several towns. In the early morning hours of November 11, 2021, the police used a tire deflation device to stop the defendant's vehicle, and they then arrested the defendant. Gunshot residue tests performed on swabs that were taken from the defendant's hands while he was at the West Hartford Police

---

[2] "The double jeopardy clause of the fifth amendment is made applicable to the states through the due process clause of the fourteenth amendment." (Internal quotation marks omitted.) *State* v. *Williams*, 352 Conn. 104, 132, 335 A.3d 792 (2025).

Department revealed the presence of gunshot residue on the defendant's right hand.

On July 7, 2023, the second day of jury voir dire, the state filed a six count substitute information charging the defendant with various offenses, including assault in the first degree with a firearm (count one) and home invasion (count two).[3] Defense counsel raised a third-party culpability defense at trial, arguing that the defendant's close friend and associate, Kohrey Crawley, was the real perpetrator. Specifically, defense counsel asserted that Crawley, who at the time was in a relationship with M's elder daughter, had been in a physical altercation with Daniels several hours before the shooting, which provided Crawley's motive for the shooting, and that Crawley fled to North Carolina immediately after the shooting. The prosecutor did not dispute that Crawley was likely involved in the planning and execution of the defendant's crimes. The prosecutor nonetheless argued that there was no evidence that anyone other than the defendant entered R's home on the night in question and shot Daniels. The jury found the defendant guilty on all counts. This appeal followed. See General Statutes §51-199 (b) (3).

I

We first address the defendant's claim that the trial court committed plain error by instructing the jury on a theory of liability that was not charged in the information, in violation of his sixth amendment right to be informed of the charges against him.[4] The court instructed the jury, in accordance with subdivision

---

[3] The state filed a substitute information on July 18, 2023, that deleted an erroneous reference to General Statutes §53a-48 and fixed a few minor errors, but the substitute information was otherwise identical to the July 7, 2023 information.

[4] Because the defendant waived his claim of instructional error in the trial court; *State* v. *Kitchens*, 299 Conn. 447, 482–83, 10 A.3d 942 (2011); he seeks review under the plain error doctrine. See, e.g., *State* v. *McClain*, 324 Conn. 802, 815, 155 A.3d 209 (2017) (*Kitchens* waiver does not preclude appellate relief under plain error doctrine).

(2) of § 53a-100aa (a),[5] that it could find the defendant guilty of home invasion if it found that he was armed with a deadly weapon inside R's home. The defendant argues that this instruction violated his sixth amendment right to fair notice because count two of the information "tracked" the language of subdivision (1) of § 53a-100aa (a),[6] which required proof that the defendant had committed a felony against the person of another inside the home. The defendant contends that "the state was limited by the information to proving home invasion by establishing that the defendant [had] committed an assault in the house, not that he [had been] armed with a deadly weapon." The defendant further contends that, because the trial court "exclusively instructed the jury on a [subdivision] of the statute [under] which he was not charged," his claim is not susceptible to harmless error analysis, and, therefore, he is entitled to a new trial on the home invasion charge as a matter of law. **(Emphasis omitted.)** The state responds that the defendant's sixth amendment claim is without merit because the information provided constitutionally adequate notice that the defendant was subject to liability under either subdivision (1) or (2) of § 53a-100aa (a). The state further contends that, even if the trial court erred by instructing the jury in accordance with subdivision (2) rather than subdivision (1) of § 53a-100aa (a), any such error is demonstrably harmless because the jury found the

---

[5] General Statutes § 53a-100aa (a) provides in relevant part: "A person is guilty of home invasion when such person enters or remains unlawfully in a dwelling, while a person other than a participant in the crime is actually present in such dwelling, with intent to commit a crime therein, and, in the course of committing the offense . . . (2) such person is armed with explosives or a deadly weapon or dangerous instrument."

[6] General Statutes § 53a-100aa (a) provides in relevant part: "A person is guilty of home invasion when such person enters or remains unlawfully in a dwelling, while a person other than a participant in the crime is actually present in such dwelling, with intent to commit a crime therein, and, in the course of committing the offense: (1) Acting either alone or with one or more persons, such person or another participant in the crime commits or attempts to commit a felony against the person of another person other than a participant in the crime who is actually present in such dwelling . . . ."

defendant guilty of assault in the first degree as charged in count one. We find no plain error.

The following additional facts and procedural history are relevant to our resolution of this claim. On the second day of jury selection, the state substituted its seven count short form information with a six count long form information. Count one of the information charged the defendant with assault in the first degree in violation of §53a-59 (a) (5)[7] and alleged that, "on or about November 10, 2021, at approximately 9 p.m. . . . in West Hartford, the defendant, while acting with the intent to cause physical injury to another person, to wit, [Daniels], caused such injury to that person by discharge of a firearm."

Count two of the information charged the defendant with home invasion "in violation of . . . §. . . 53a-100aa and allege[d] [that], on or about November 10, 2021, at approximately 9 p.m. . . . in West Hartford, the defendant unlawfully entered the home of another person, while four other persons were present, and therein did commit a felony against the person of another person who was present in the home, to wit: the defendant committed the crime of assault in the first degree against . . . Daniels." Unlike count one, which alleged a violation of subsection (a) (5) of §53a-59, the first degree assault statute, count two did not allege that the defendant's conduct violated a specific subsection or subdivision of §53a-100aa, only that it violated the statute generally. Counts three through six alleged criminal possession of a firearm, threatening in the second degree, and two counts of risk of injury to a child, respectively, all based on the defendant's alleged possession and use of a firearm inside R's home.

On the same day, the trial court provided the parties with copies of its proposed jury instructions, which

[7] General Statutes §53a-59 (a) provides in relevant part that "[a] person is guilty of assault in the first degree when . . . (5) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of the discharge of a firearm."

defined the crime of home invasion exclusively in terms of subdivision **(2)** of §53a-100aa **(a)**. That subdivision requires proof that the defendant was armed with a deadly weapon. See footnote 5 of this opinion. The trial court later provided the parties with an updated proposed jury charge, which continued to define the crime of home invasion exclusively in terms of §53a-100aa (a) (2). At the charging conference, which was held on the second to last day of trial, defense counsel expressly stated that he did not have any concerns about the home invasion instructions.

Following closing arguments, the trial court instructed the jury in relevant part: "In count one of the information, the defendant is charged with the crime of assault in the first degree. The statute defining this offense reads as follows: A person is guilty of assault in the first degree when, with intent to cause a physical injury, he causes such injury by means of the discharge of a firearm.

"For you to find the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt: the defendant had the specific intent to cause physical injury to another person and that, acting with that intent, the defendant caused such injury by the means of a discharge of a firearm. . . .

"In count two, the [defendant is] charged with home invasion. The statute defining that offense reads as follows: A person is guilty of home invasion when such person enters or remains unlawfully in a dwelling, while a person other than a participant in the crime is actually present in such dwelling, with an intent to commit a crime therein, and, in the course of committing the offense, such person is armed with a deadly weapon.

"For you to find the defendant guilty of this offense, the state must prove the following elements beyond a reasonable doubt: **(1)** that the defendant knowingly and unlawfully entered or remained in a dwelling; **(2)** that the unlawful entering or remaining in the dwelling was effected or occurred with the defendant's intent

to commit a crime in the dwelling; **(3)** that, when the defendant entered or remained in the dwelling, a person other than the participant in the crime was actually present in the dwelling; and **(4)** that, in the course of committing this offense, the defendant was armed with a deadly weapon."

In explaining each of the four elements of home invasion to the jury, the trial court further instructed: "It is not necessary that [the defendant] actually did commit a crime in the dwelling, only that the evidence establishes beyond a reasonable doubt that, at the time of the entering or remaining unlawfully, he intended to commit a crime. . . . In this case, the state claimed that the defendant intended to commit the crime of assault in the first degree. That is a crime under our statutes. You will recall that the court instructed you on the elements of assault in the first degree. Those instructions are incorporated here with the same force and effect. . . . The fourth element is that, in the course of committing the home invasion, the defendant was armed with a deadly weapon. . . . Our law defines a 'deadly weapon' as any weapon, whether . . . loaded or unloaded, from which a shot may be discharged." When the court finished instructing the jury, defense counsel reiterated his earlier objection to the reasonable doubt instructions but took no exception to the court's home invasion instructions. With this background in mind, we turn to the defendant's claim that, because the language in count two of the information tracked the language of subsection (a)(1) of § 53a-100aa, it was plain error for the trial court to instruct the jury in accordance with subsection (a)(2) of the statute.

"[The plain error] doctrine, codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. . . . It is axiomatic that . . . plain error review is reserved

for only the most egregious errors. When an error of such magnitude exists, it necessitates reversal. . . . An appellate court addressing a claim of plain error first must determine if the error is indeed plain in the sense that it is patent [or] readily discernable on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . [I]n addition to examining the patent nature of the error, the reviewing court must examine that error for the grievousness of its consequences in order to determine whether reversal under the plain error doctrine is appropriate. . . . Thus, we employ a two-pronged test to determine whether plain error has occurred: the defendant must establish that (1) there was an obvious and readily discernable error, and (2) that error was so harmful or prejudicial that it resulted in manifest injustice." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Kyle A.*, 348 Conn. 437, 445–46, 307 A.3d 249 (2024). Our review "with respect to whether to reverse a trial court's judgment under the plain error doctrine is plenary." Id., 446.

"The sixth amendment to the United States constitution and article first, §8, of the Connecticut constitution guarantee a criminal defendant the right to be informed of the nature of the charge against him with sufficient precision to enable him to prepare his defense, to avoid prejudicial surprise and to plead his conviction or acquittal in bar of any future prosecution." *State* v. *Hufford*, 205 Conn. 386, 397, 533 A.2d 866 (1987). "Therefore, for the defendant to establish an infringement of these constitutional rights, he must demonstrate that the court's charge caused him unfair surprise or prejudiced the preparation of his defense." (Internal quotation marks omitted.) *State* v. *Chapman*, 229 Conn. 529, 538, 643 A.2d 1213 (1994).

We conclude that the state's information provided the defendant with adequate notice that he could be convicted under either subdivision (1) or (2) of §53a-100aa (a), such as to enable him to prepare a defense and to avoid

prejudicial surprise. Although it is true that count two tracked the language of subsection (a) (1), insofar as it alleged that, after entering R's home unlawfully, the defendant committed assault in the first degree against Daniels, the state had to prove that the defendant was armed with a deadly weapon in order to show that he had committed first degree assault in the manner described in count two of the information. See General Statutes § 53a-59 (a)(5). Accordingly, under the facts and circumstances of this case, it was not possible for the defendant to have committed home invasion in the manner described in count two of the information without satisfying the elements of § 53a-100aa (a) (1) *and* (2), thereby putting the defendant on notice that he was subject to criminal liability under both subdivisions of § 53a-100aa (a). Cf., e.g., *State* v. *Tinsley*, 340 Conn. 425, 435, 264 A.3d 560 (2021) (defendant receives constitutionally adequate notice of lesser included offense when "it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser" (emphasis omitted; internal quotation marks omitted)); *State* v. *Tomlin*, 266 Conn. 608, 617, 835 A.2d 12 (2003) ("whe[n] one or more offenses are lesser than and included within the crime charged, notice of the crime charged includes notice of all lesser included offenses" (internal quotation marks omitted)).

For the purpose of providing the defendant with constitutionally adequate notice of the offense charged against him, it was not necessary for the information to specify that the defendant's conduct violated a particular subsection or subdivision of the home invasion statute, only that it violated the statute generally. See, e.g., *State* v. *Phillips*, 67 Conn. App. 535, 541, 787 A.2d 616 (2002) ("[T]he short form information, in effect at the commencement of the voir dire, charged the defendant with the substantive offense of assault of a peace officer pursuant to [General Statutes (Rev. to 1997)] § 53a-167c. . . . Because that information did not specify a particular subdivision of § 53a-167c (a), it provided

the defendant with notice that he could be convicted . . . under any of the subdivisions of § 53a-167c (a).”). To the extent that the defendant had any question as to whether the state's theory of liability encompassed both subdivisions of § 53a-100aa (a), it was incumbent on him to file a motion for a bill of particulars, which he did not do. See Practice Book § 36-19; see also, e.g., *State* v. *Frazier*, 194 Conn. 233, 236, 478 A.2d 1013 (1984) (“The function of the bill of particulars . . . is to enable the defendant to obtain a more precise statement of the offense charged in the information in order to prepare a defense. . . . The defendant bears the burden of requesting a bill of particulars . . . .” (Citations omitted; internal quotation marks omitted.)).

Moreover, to the extent that the allegations in count two were ambiguous as to whether the defendant was subject to liability under § 53a-100aa (a) (1) and (2), each remaining count in the information was also predicated on the defendant's alleged possession and use of a deadly weapon inside R's home, making it eminently clear that the defendant would have to defend against that charge at trial. See, e.g., *State* v. *Correa*, 241 Conn. 322, 344–45, 696 A.2d 944 (1997) (in determining whether defendant had notice of charges against him, “[w]e do not read each count specified in the substitute information . . . in isolation”); see also, e.g., *State* v. *Beaulieu*, 164 Conn. 620, 625–26, 325 A.2d 263 (1973) (information claimed to be lacking in one count was supplied by another count). The trial court's proposed jury instructions, which were distributed to both parties one full week before the start of evidence, similarly apprised the defendant in no uncertain terms that he was subject to liability under both subdivisions of § 53a-100aa (a). See, e.g., *State* v. *King*, 321 Conn. 135, 153, 136 A.3d 1210 (2016) (“[T]he court's jury instructions, as a reflection of the charging document, demonstrate that the defendant had notice of his potential to be convicted of both offenses. . . . When the trial court asked both counsel if they had any comments or objections to the jury instructions as they were delivered, neither counsel objected.”); see also, e.g., id.,

150–51 n.8 ("[t]he purpose of the information is to provide a defendant with notice of the charges against him and the jury instructions serve as a reflection of those charges"). In light of the foregoing, we conclude that it was not plain error for the trial court to instruct the jury in accordance with subsection (a)(2) of §53a-100aa rather than subsection (a)(1) of that statute.

Furthermore, even if we were to conclude that there was an obvious and readily discernible error in the trial court's instructions due to a variance between the information and the jury charge, such a conclusion still would not warrant reversal for plain error because the error did not prejudice the defendant's defense, let alone result in the type of manifest injustice required to reverse a conviction under the plain error doctrine. Indeed, the defendant's brief is devoid of any such claim. See, e.g., *State* v. *Kyle A.*, supra, 348 Conn. 449 ("[a] defendant must prove both obviously and readily discernable error and manifest injustice to prevail on [his] claim of plain error"); see also, e.g., *State* v. *Vumback*, 263 Conn. 215, 227, 819 A.2d 250 (2003) ("[t]his court has long held that a [criminal] defendant can gain nothing from [the claim that the state's pleadings are insufficient] without showing that he was in fact prejudiced in his defense on the merits and that substantial injustice was done to him because of the language of the information" (internal quotation marks omitted)); *State* v. *Roque*, 190 Conn. 143, 156, 460 A.2d 26 (1983) ("[t]he defendant has not, as he must, demonstrated that he was in fact prejudiced in his defense on the merits . . . because of the language of the state's pleadings").

The defense at trial was that someone else, probably Crawley, had entered R's home on the night in question and shot Daniels. There is nothing in the record to suggest that the defendant's defense would have been any different, or gained any probative force, had count two of the information specifically alleged a violation of subsection (a)(2) of §53a-100aa rather than tracked the language of §53a-100aa (a)(1). To the contrary, we can say with

certainty that his defense would have been no different because he raised the same defense with respect to count one (assault in the first degree with a firearm) and count three (criminal possession of a firearm). See, e.g., *State* v. *Chapman*, supra, 229 Conn. 538 ("There is not the slightest indication in this record that the defendant's defense would have been different if the instruction had not included the threat of use of force. . . . Because the defendant's theory of defense [was] unrelated to the method of compulsion employed to compel intercourse, the defendant has not established [prejudice]."); *State* v. *Scognamiglio*, 202 Conn. 18, 22–23, 519 A.2d 607 (1987) ("There is nothing in the record to indicate that the defendant would have altered his defense in any way if a theory of liability based on the killing of the victim 'in the course of and in furtherance of . . . flight' . . . from the robbery had been included in the allegations of the indictment. His defense was predicated on his assertion that he had not been a participant in the robbery. . . . We are . . . unable to discern any way in which the defense of the accused was prejudiced by the trial court's instruction concerning the flight theory of liability. Under either theory . . . if the defendant did not participate in the robbery, or facilitate the getaway, as he had testified, he would have been acquitted had he been believed by the jury." (Emphasis omitted.)).

The defendant argues nonetheless that, "because the [trial] court . . . exclusively instructed the jury on a [subdivision] of the home invasion statute [under] which he was not charged, [this case] presents a situation akin to that which occurred in *State* v. *Ares*, 345 Conn. 290, 284 A.3d 967 (2022), and his conviction cannot stand." We disagree. First, as we explained, we reject the underlying premise of the defendant's argument that he was not charged pursuant to § 53a-100aa (a) (2). The defendant was charged with violating § 53a-100aa generally, not with violating a specific subsection or subdivision of that statute, and the facts alleged in the information satisfied the elements of both subdivisions of § 53a-100aa (a). Second, in *Ares*, the defendant sought review pursuant

to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015), of his unpreserved claim that the trial court had violated his sixth amendment right to be informed of the charges against him by finding him guilty of violating subdivision (1) of § 53-21 (a), the risk of injury to a child statute, under the situation prong of that subdivision when the state's information had alleged a violation of only the act prong. See *State* v. *Ares*, supra, 305–307. We concluded that the defendant's conviction could not stand in light of the well established rule that, "when the operative information against a criminal defendant charges either the act or the situation prong alone, a consideration of the uncharged portion of the statute is improper." Id., 307. This court rejected the state's harmless error claim, insofar as the trial court in that case did not consider the elements of both prongs of § 53-21 (a) (1) and render a general finding of guilt, but, instead, it expressly considered and exclusively applied the elements required for a conviction under an uncharged portion of the risk of injury statute, in violation of the defendant's constitutional rights. See id., 310–11; see also id., 310 ("[t]he language employed by the trial court in rendering its decision . . . persuades us . . . that [the defendant] was . . . convicted under the situation prong of § 53-21 (a) (1) and not under the act prong, as charged in the operative information"). In the present case, by contrast, the jury found the defendant guilty of assault in the first degree as charged in count one. Accordingly, we can say without doubt that the jury would have found the defendant guilty under either subdivision of § 53a-100aa (a) had the trial court's instructions permitted it to do so.

## II

The defendant next claims that his convictions of home invasion in violation of § 53a-100aa (a) (2) and assault in the first degree with a firearm in violation of § 53a-59 (a) (5) violate the constitutional prohibition against double jeopardy because those charges arose from the same act

or transaction and constitute the same offense under *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). The state responds that the defendant's double jeopardy claim lacks merit because home invasion and first degree assault each requires proof of an element that the other does not, and, therefore, they do not constitute the same offense under *Blockburger*. Because the defendant did not preserve this claim in the trial court, he seeks to prevail under *State* v. *Golding*, supra, 213 Conn. 239–40, as modified by *In re Yasiel R.*, supra, 317 Conn. 781.

We conclude that the defendant's claim is reviewable under the first two prongs of *Golding* because the record is adequate for review and the claim is of constitutional magnitude.[8] See, e.g., *State* v. *Schovanec*, 326 Conn. 310, 324–25, 163 A.3d 581 (2017) (reviewing unpreserved double jeopardy claim under *Golding*); see also, e.g., *In re Vada V.*, 343 Conn. 730, 741, 275 A.3d 1172 (2022) ("[t]he first two steps in the *Golding* analysis address the reviewability of the claim, [whereas] the last two steps involve the merits of the claim" (internal quotation marks omitted)). The defendant's claim fails under the third prong of *Golding*, however, because home invasion in violation of § 53a-100aa (a) (2) and assault in the first degree with a firearm in violation of § 53a-59 (a) (5) do not constitute the same offense under *Blockburger*.

"It is well established that [d]ouble jeopardy prohibits not only multiple trials for the same offense, but also multiple punishments for the same offense. . . . Double jeopardy analysis in the context of a single trial is a [two

---

[8] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40; see also *In re Yasiel R.*, supra, 317 Conn. 781 (modifying third prong of *Golding*).

step] process, and, to succeed, the defendant must satisfy both steps. . . . First, the charges must arise out of the same act or transaction [step one]. Second, it must be determined whether the charged crimes are the same offense [step two]. Multiple punishments are forbidden only if both conditions are met. . . . At step two, we [t]raditionally . . . have applied the *Blockburger* test to determine whether two statutes criminalize the same offense, thus placing a defendant prosecuted under both statutes in double jeopardy: [When] the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one . . . is whether each provision requires proof of a fact [that] the other does not." (Citation omitted; internal quotation marks omitted.) *State* v. *Abraham*, 343 Conn. 470, 488, 274 A.3d 849 (2022). In applying this test, "we look at whether the statutes have the same elements or whether each statute contains an element that the other does not." *State* v. *King*, 346 Conn. 238, 259, 288 A.3d 995 (2023).

To prove the defendant guilty of home invasion in violation of §53a-100aa (a) (2), the state was required to establish the following essential elements beyond a reasonable doubt: (1) the defendant entered or remained unlawfully in a dwelling, (2) a person other than a participant in the crime was actually present in the dwelling at the time, (3) the defendant intended to commit a crime in the dwelling, and (4) the defendant was armed with explosives, a deadly weapon, or a dangerous instrument. See footnote 5 of this opinion. To prove the defendant guilty of assault in the first degree with a firearm in violation of §53a-59 (a) (5), the state was required to establish that, "with intent to cause physical injury to another person, [the defendant] cause[d] such injury to such person or to a third person by means of the discharge of a firearm." Both home invasion and first degree assault with a firearm require proof of an essential element that the other does not. Unlike first degree assault, the crime of home invasion requires proof that the defendant entered or remained unlawfully in a dwelling while a person other

than a participant in the crime was present therein. Unlike home invasion, the crime of first degree assault with a firearm requires proof that the defendant caused serious physical injury to another person by means of the discharge of a firearm. Accordingly, home invasion and first degree assault with a firearm are not the same offense for purposes of the double jeopardy clause.

In support of his claim to the contrary, the defendant relies entirely on the fact that the allegations set forth in count two of the information tracked the language of §53a-100aa (a) (1). The defendant contends that, "[b]ecause, as charged in the present case, it was necessary for [him] to commit the assault in order to be guilty of home invasion, first degree assault was subsumed within the home invasion charge." He further contends that "our courts have recognized that greater offenses and their predicate offenses may constitute the same charge under the *Blockburger* test."

Although count two of the information may have tracked the language of subsection (a) (1) of §53a-100aa, it is undisputed that the trial court instructed the jury solely in accordance with subsection (a) (2) of the statute, which did not require the jury to find that the defendant committed assault in the first degree in order to find him guilty of home invasion, insofar as the jury was instructed that it could find the defendant guilty of home invasion if it found that he was armed with a deadly weapon after entering R's home with the intent to commit a crime therein. See, e.g., *State* v. *Abraham*, supra, 343 Conn. 493 ("the commission or attempted commission of a separate predicate offense is not an essential element of home invasion under subdivision (2) of §53a-100aa (a) . . . [as] the crime is complete when a defendant enters or remains unlawfully in an occupied dwelling with intent to commit a crime therein while armed with an explosive, a deadly weapon, or a dangerous instrument"); see also, e.g., *State* v. *Moore*, 352 Conn. 912, 922, 336 A.3d 1222 (2025) ("double jeopardy principles require analysis of statutory elements to determine

whether each crime requires proof of an essential element that the other does not under [*Blockburger*], *without consideration of either the evidence adduced at trial or the facts alleged in the state's charging document*" (emphasis added; internal quotation marks omitted)). Because, as presented to the jury, assault in the first degree was not a predicate offense for the home invasion charge, there is no possibility that the defendant was punished twice for that offense—once in connection with count one and a second time in connection with count two. See, e.g., *Hudson* v. *United States*, 522 U.S. 93, 99, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997) ("[t]he [double jeopardy] [c]lause protects only against the imposition of multiple criminal punishments for the same offense" (emphasis omitted)). We therefore reject the defendant's claim that his convictions of home invasion and first degree assault with a firearm violated double jeopardy principles.[9]

The judgment is affirmed.

In this opinion the other justices concurred.

---

[9] "[T]he *Blockburger* test creates only a rebuttable presumption of legislative intent, [and] the test is not controlling when a contrary intent is manifest. . . . When the conclusion reached under *Blockburger* is that the two crimes do not constitute the same offense, the burden [is] on the defendant to demonstrate a clear legislative intent to the contrary." (Internal quotation marks omitted.) *State* v. *Abraham*, supra, 343 Conn. 494 n.18. In the present case, "[t]he defendant does not claim that the legislature clearly intended the crimes of home invasion and . . . assault in the first degree to be treated as the same offense for double jeopardy purposes, even though they constitute separate offenses under the *Blockburger* test, and, therefore, we conclude that he has failed to fulfill his burden of establishing a double jeopardy violation." Id.; see also, e.g., *State* v. *Tinsley*, supra, 340 Conn. 445–46 (concluding that no double jeopardy violation existed because defendant had provided no authority for his claim that legislature intended to treat crimes of conviction as same offense for double jeopardy purposes, even though they constituted separate offenses under *Blockburger*).